**People of the State of Illinois, Plaintiff-Appellee, v. Nathaniel Scott, Defendant-Appellant.**

**Gen. No. 11,139.**

Fourth District.

December 8, 1969.

Glenn O. Fuller, Assistant Public Defender, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Garry E. Davis, Assistant State's Attorney, of counsel), for appellee.

CRAVEN, J., delivered the opinion of the court.

Having waived indictment, an information was filed charging the defendant with the armed robbery of the Imperial 400 Motel in Decatur, Illinois. A jury trial resulted in a verdict of guilty. The defendant was sentenced to the Illinois State Penitentiary for a term of not less than seven nor more than fourteen years. The defendant appeals, contending that the evidence was not sufficient to establish his guilt beyond a rea-

sonable doubt. He also asserts the sentence as imposed by the trial court is excessive and seeks its reduction.

At around 11:00 p. m. on October 31, 1967, a man entered the Imperial Motel in Decatur. Mildred Werndler, a clerk in the motel, had been watching television in the reception area. As she walked behind the counter he followed her, pulled a gray automatic pistol and instructed her to go to a back room. When she informed him that there was a party going on in that room, he instructed the clerk to show him the cash drawer. She did so. He instructed her to look out the window, he took the money from the cash drawer, then compelled the clerk to walk with him out of the motel and told her to walk to the end of the parking lot. As she did so, he turned and ran. The clerk returned to the motel and reported the incident to the manager.

Mrs. Werndler, in her testimony, described the robber—the clothing worn by him, with particular reference to a "slight mustache" and "slicked down" and combed "straight" back hair, and other physical features. At first she was unable to express an opinion as to his age but later stated his age to be in his late or mid-thirties. She was cross-examined and stated that she had only glanced at the man and was basing her identity and description upon his build and the opportunity she had to see his face when she turned around just as he followed her behind the counter. She also testified with reference to having seen his reflection in a plate-glass window while he was emptying the cash drawer. A police officer, Roger Davis, called as a witness for the People, described a lineup held at the Decatur Police Department on October 25, 1968, at which time Mrs. Werndler saw the defendant. Mrs. Werndler identified the defendant at the trial.

One Linda Mabon, with whom the defendant was living at the time of and prior to the robbery, testified that she was in the defendant's automobile (which was

346

described) as he drove by the motel. She testified that he told her he was going to rob the motel and that he was looking it over to ascertain a means of a fast getaway from the premises. They then returned to her apartment and shortly thereafter he left and returned in about an hour, stating that he had robbed the motel. She further testified that she owned a small gray automatic pistol and that the defendant had the pistol with him on the night in question. She was further cross-examined as to the defendant's appearance in October of 1967 compared to his appearance at trial.

The defendant testified in his own behalf and denied his guilt.

One Yvonne Rawls also testified for the defendant. She stated that she was "going with him" in October of 1967; that she saw him "About every other day"; that he did not have a mustache during that period; that he had a missing front tooth; and she described the manner in which he groomed his hair, which was different from the description given by Mrs. Werndler.

Although we have not detailed the evidence, we have recited the essentials of the testimony to establish that this is a classic case wherein the trier of facts must determine credibility of witnesses and the weight to be given the testimony of witnesses. This court, on review, cannot substitute its judgment for that of the jury in the absence of a reasonable doubt as to the defendant's guilt. People v. Slifer, 108 Ill App2d 275, 247 NE2d 174 (4th Dist 1969). Our review of this record establishes no such doubt.

Finally, the defendant contends that the sentence imposed by the trial court is excessive and should be reduced on appeal. The Code of Criminal Procedure of 1963, section 121-9(b)(4) (SHA, c 38, § 121-9(b) (4)), contained a grant of authority to reviewing courts to reduce the punishment imposed by a trial court. That provision, now found as Supreme Court Rule 615 (Ill

Rev Stats 1967, c 110A, § 615(b)(4)), was originally incorporated into the Code so that a reviewing court would have power to do complete justice when a case is before it and thus avoid retrials and delay, and presumably to avoid not only the subterfuge but also the necessity of making bad law to meet hard cases—at least this latter point is asserted by some writers (Rubin, The Law of Criminal Correction, p 148 (1963)). The Supreme Court has made it clear that use of this new grant of authority by reviewing courts is to be with considerable caution and circumspection. People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965).

The authority to reduce the punishment imposed by the trial court should not be used as a form of judicial clemency nor should it be used by an appellate tribunal to substitute its judgment as to the appropriate penalty for the judgment of the trial judge. If, however, such authority is utilized only when a sentence exceeds the statutorily authorized sentence, or where a sentence is clearly so excessive as to constitute a great departure from the spirit and purpose of the law or is oppressive, then we will have, by indirection, condoned disparate sentencing and thereby frustrated the intent and promise of appellate review of sentences incorporated in the Code of Criminal Procedure. A provocative article—Halperin, Appellate Review of Sentence in Illinois—Reality or Illusion?, 55 Ill BJ 300 (Dec. 1966), reviews in detail the cases decided to the date of the article. The article concludes (at 313):

> ". . . It may well be that a case-by-case consideration of the merits of each sentence appeal will result in the great majority of sentences being affirmed; . . . but the reasons given, if they relate to principles of penology, will still serve as useful guides for trial courts. But reliance on a supposed lack of power to act, or on 'general rules' requiring

affirmance in all but the most extreme cases, can only give impetus to the movement to take sentencing completely out of the hand of the judiciary. . . ." (Footnotes omitted.)

In this case the defendant is 24 years old. The record indicates a prior history of employment both in Decatur and in Detroit. There is nothing in the record showing any prior criminal behavior of the defendant—at least no prior conviction, either felony or misdemeanor, is shown. An item of aggravating circumstance indicates that a piece of metal was found on the defendant's person while he was incarcerated. There is controversy with reference to the circumstance, but it is clear that the trial court considered this an aggravating circumstance, and we agree.

██ Counsel for the defendant strenuously urged that the high minimum in this case is fixed not as punishment for the crime, but as punishment for the crime and the exercise by the defendant of his right to a trial by jury. The trial court, at the time of sentencing, clearly expressed his view that one charged with a criminal offense is "absolutely entitled . . . to have a jury determine his guilt or innocence, . . ." and that the exercise of the right should not and would not result in an enhanced penalty. This is a clear statement of an undebatable principle and one with which this court is in accord.

██ The determination of an appropriate sentence in a criminal case is probably the most difficult decision that trial judges must make. In People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1st Dist 1968), Mr. Justice Drucker quoted with approval the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (the then Tentative Draft, 1967, now Approved Draft, 1968), by observing that " 'In order to

preserve the principle of indeterminacy, the court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed.'" (At 128 of 92 Ill App2d, at 381 of 235 NE2d.) We would view the standard as quoted as only a guide and not as a hard-and-fast rule. Indeed, there may well be factual circumstances that compel deviation from the guide.

The principle to be preserved is that of an indeterminate sentence rather than hard-and-fast adherence to a mathematical formula that may arrive at an indeterminate sentence but does not permit of consideration of individual factors in a particular case.

■ The minimum sentence measures parole eligibility. The maximum sentence measures the length of time that the inmate may be incarcerated, even without favorable parole consideration. When there is a substantial spread between the minimum and the maximum of a sentence the inmate in the institution can be directed toward academic or vocational training, and favorable prospective parole consideration operates as quite a catalyst. The existence of a substantial spread between the minimum and the maximum ensures the availability to the defendant of supervision after incarceration. The principle of indeterminacy of sentence necessarily leaves to the professionals in the behavioral sciences the determination of the optimum date for release. The court, in fixing the maximum, determines the total length of possible incarceration.

■ In this case, with no indication of prior criminal propensities, we believe it appropriate that the minimum sentence be reduced from seven to five years. People v. Lillie, 79 Ill App2d 174, 223 NE2d 716 (5th Dist 1967) ; People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1st Dist 1968).

The minimum sentence is reduced from seven years to five years. As modified the judgment of the Circuit Court of Macon County is affirmed.

Sentence modified; as modified judgment affirmed.

TRAPP, P. J. and SMITH, J., concur.