**People of the State of Illinois, Plaintiff-Appellee, v. Willard B. Davis, Jr., Defendant-Appellant.**

Gen. No. 53,727.

First District, Fourth Division.

June 10, 1970.

Howard T. Savage, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Armed robbery. Ill Rev Stats 1967, c 38, § 18–2.

JUDGMENT
After a bench trial, defendant was found guilty and sentenced to a term of 4 to 8 years.

ISSUES RAISED ON APPEAL
1. Defendant was prejudiced by the admission of an in-court identification resulting from a prejudicial out-of-court confrontation.
2. Defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE
James Clark, for the State:

He was employed at Roberts Motel, 3760 South Michigan Avenue, as a desk clerk. On June 26, 1967, at 1:10 a. m., he was sitting behind the desk filling out a registration sheet. Working with him was Geneva Powell, the switchboard operator, and standing across the desk in the motel lobby was James Barnes, a guest. Two men walked into the motel lobby, and he glanced at them and continued working. He identified defendant in court as one of the two men. Lighting in the lobby and behind the desk was excellent.

The men approached the counter and asked about room rates. Witness kept his head down while answering them. When they then asked him if he rented single units to two men, he raised up, looked at them, and said, "No." They were about a foot away from the witness at that time. They then displayed pistols, and said, "This is a stickup." He described the attire of the robbers and their weapons. They asked for the money, and he put the cash box, containing about $300, on the counter. Defend-

ant stood at the counter as the other man grabbed the box and asked for "the envelope." This entire sequence took about two minutes. Witness said he didn't have any envelope, whereupon both men came behind the counter. Defendant held a gun on the switchboard operator as the other man started searching for the envelope. The witness observed the defendant, who was about four feet away, out of the corner of his eye. While behind the desk, the men took five envelopes containing currency and checks, all in a period of about three minutes. They walked to the front of the counter facing the witness and he saw them take a billfold from Mr. Barnes. He looked at their faces. Then they left, running south on Michigan Avenue. He called the police and they responded in 5 to 10 minutes.

Several days later, detectives brought five or six photographs to his home and he identified a photograph of defendant as being a picture of one of the men who had robbed him. Four or five days after that, police took him to the station to attend a lineup. He was told that they had a suspect and wanted to see if he could identify him. (On cross-examination, he testified that on the morning of the trial he told defense counsel that the police had told him, "Come down. We have caught the men.") There were six or seven men in the lineup and he identified defendant as one of the men who participated in the robbery.

Geneva Powell, for the State:

On the morning of June 26, 1967, she was working at Roberts Motel as the switchboard operator. She was placing a long distance call and not paying much attention when she heard a voice say, "Give me the envelopes." A man with a gun then stood next to her for a minute or two and told her not to place any calls. The man walked back to the desk and she sat there until they left the office.

She testified that she couldn't make an in-court identification by face, but that defendant was approximately the same size as the robber. She had been shown three or four photographs by the police several days after the incident and had seen one that may have been the robber, but she wasn't certain it was the same man. She attended a police station lineup but was not able to identify anyone who had participated in the robbery.

Ralph Gibson, for the State:

He was a police officer on June 26, 1967, and investigated the robbery of Roberts Motel. He first saw defendant on July 6 when defendant came to the station to give himself up. He advised defendant of his rights and stated that he could have his lawyer present if he wanted, but defendant said he had talked to his lawyer and didn't want to have him present. Defendant was then told he was going to be put in a lineup, and was placed in a lineup with five other men. He didn't remember telling defendant that he had a right not to participate in the lineup, nor did he specifically inform defendant that he had a right to have an attorney with him at the lineup. James Clark was brought in to view the lineup and identified defendant as one of the men who had committed the robbery.

Betty Jean Mitchell, for the defense:

She is defendant's sister and saw him on June 25, 1967, at 8:30 to 9:00 p. m., near 63rd Street and Vernon. He was with his fiancee, Vera, and their little girl, Lisa. The group there included her husband, her other brother, her sister Odessa LeBray and her husband, and a girl named Bonita. They all went to the LeBrays' house and remained there until about 11:30 p. m. Defendant was there during that time except for ten minutes. She and her husband, Vera, Lisa, and defendant left in a car driven by defendant, and proceeded to the house of her uncle, Harry Davis, arriving at about 12:00 or 12:30 a. m.

She and defendant went into the house and talked to Harry and his wife Ruby. They stayed for about 10 minutes, went downstairs and met Lawrence Davis, her uncle's son. They had a conversation with him until 12:55 a. m. Then they drove to a drugstore at 35th Street and South Parkway where her husband and defendant went in to purchase a drink. She met some people she knew and everyone stayed in that vicinity until 1:45 a. m., when they returned to her house where defendant, Vera and Lisa remained until daybreak.

When she first talked to the police, she did not tell them the same story she related in court because she didn't know why they were questioning her. Her sister Odessa had worked at Roberts Motel for three years.

Cecil Mitchell, for the defense:

He is the husband of defendant's sister, Betty Jean Mitchell. He was with defendant on the evening in question and his account of the events that evening was substantially similar to that of his wife. He didn't remember whether he had told the police the same story when they first questioned him. He had denied to the police that he knew anybody named "Lucky," although he knew that was defendant's nickname. He had lied to the police.

Ruby Davis, for the defense:

She is defendant's aunt and had occasion to see him at her house in the early morning of June 26, 1967, when he and his sister stopped by. She thought it was about 12:30 a. m., and they stayed 10 or 15 minutes. She remembered the evening because she and her husband, Harry, had watched the late movie, but she didn't recall what day of the week it was.

Harry Davis, for the defense:

He is defendant's uncle. His testimony, in substantial part, was similar to that of his wife.

Caroline Watson, for the defense:

She was working at Alco Drugs on June 25, 1967, from 4:00 p. m. to 1:00 a. m. She stated that June 25 fell on a Saturday. She saw defendant come into the store with Cecil Mitchell at about 1:00 or 1:05 a. m. Before leaving for home with her husband, she went outside to defendant's car and talked to defendant, Vera and the Mitchells.

Willard Davis, defendant, in his own behalf:

His testimony as to the events of June 25, 1967, was similar to that given by his sister, Betty Mitchell. He learned, on June 27, that he was under suspicion for a crime. He called a lawyer, who advised him to turn himself in to the police, which he did on July 6. He believed that June 25, 1967, fell on a Saturday. His work week was Monday through Friday and he didn't recall if he had worked that day. He did work the day before, but not the day after.

It was stipulated that June 25, 1967, was a Sunday and June 26 a Monday.

Anthony Radun, for the State:

He is a police officer and on June 26, 1967, was assigned to investigate an armed robbery of Roberts Motel. That evening he talked to Cecil Mitchell, who told him that on the 25th, at 10:00 p. m., he and his wife were at the LeBrays' house with the LeBrays, an unknown couple, a fellow known to him only as "Lucky," and Lucky's girl friend. Mitchell told him that the other six people left at midnight and he and his wife remained until 2:30 a. m. Mitchell did not tell him the name of the person known as "Lucky," nor did Mitchell mention the names of Lawrence Davis or Caroline Watson. The witness also talked to Betty Jean Mitchell, who related a similar story.

The witness' testimony was based on a police report that he had prepared and signed on the date of the interviews.

261

OPINION

The initial argument advanced by defendant is that Clark's in-court identification of defendant should not have been admitted into evidence, as it was the product of a pretrial lineup conducted in the absence of defendant's counsel. Defendant relies upon the decisions in United States v. Wade, 388 US 218, and Gilbert v. California, 388 US 263. A motion to suppress the identification evidence was heard on the basis of the State's case-in-chief and was denied at the close of the State's evidence.

A factual situation similar to the case at bar was presented in People v. Palmer, 41 Ill2d 571, 244 NE2d 173, where the court analyzed the United States Supreme Court decisions. There, the court noted that the language in Gilbert and Wade referred only to post-indictment lineups, and held that "these 'lineup' decisions apply only to post-indictment confrontations." People v. Palmer, supra, at 572. At page 573, the court also relied on the later case of Simmons v. United States, 390 US 377, 382, where it was stated, in reference to the "lineup cases":

> "The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the prosecution', and that a post-indictment lineup is such a 'critical stage.'"

See also People v. Branscomb, 116 Ill App2d 385, 398–399, 254 NE2d 126.

██ The instant case comes directly within the rationale of Palmer. About an hour and a half after defendant had surrendered himself to the police, he was placed in a lineup and identified by a State's witness. An officer testified that when defendant first came to the station he had been told of his constitutional rights, including the right to have counsel present; that defendant told him he had talked to his lawyer and did not

want to have him present at that time. The lineup occurred in July, 1967, and defendant was not indicted until October, 1967. Under the circumstances of this case, we find that the decisions of Wade and Gilbert are not applicable.

■ However, the question remains as to whether the circumstances of this pretrial identification were so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was therefore denied due process of law. See Stovall v. Denno, 388 US 293. We think he was not. James Clark testified that he observed defendant from a distance of a few feet away for several minutes during the robbery. He picked defendant's photograph from five or six that the police showed him, and then positively identified defendant in a lineup of six men. We find that the record is more than adequate to establish a prior uninfluenced observation of defendant sufficient to serve as an independent origin for the in-court identification. Therefore, it is immaterial whether the identification procedure was or was not unfairly suggestive (although it appears not to have been), as defendant was not denied due process of law. People v. Cook, 113 Ill App2d 231, 239, 252 NE2d 29; People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152; People v. McMath, 104 Ill App2d 302, 312-313, 244 NE2d 330 affirmed 45 Ill2d 33, 256 NE2d 835.

Defendant also contends that he was not proven guilty beyond a reasonable doubt, since the identification testimony was weak and a strong alibi defense had been presented. He claims that the identification is vague, doubtful and uncertain, because James Clark's testimony contained some contradictions—particularly in regard to different descriptions of his robbers—and Geneva Powell, the other witness to the occurrence, never did identify defendant. He also points out that Clark gave the police no description of the robbers' facial characteris-

tics, while Mrs. Powell described one of the men as having both a beard and a mustache.

██ ██ As we have noted, James Clark had an opportunity to observe defendant from a few feet away for several minutes under excellent lighting conditions, and he positively identified defendant in the lineup as well as from a series of photographs. It is true, as argued by defendant, that where a conviction rests upon an identification which is doubtful, vague and uncertain, it will be reversed. People v. Gardner, 35 Ill2d 564, 221 NE2d 232; People v. Cullotta, 32 Ill2d 502, 207 NE2d 444; People v. Gooden, 403 Ill 455, 86 NE2d 198. However, this is a question for the trier of fact whose duty it is to consider contradictory testimony and determine the credibility of the witnesses and the weight to be accorded their evidence. People v. Coulson, 13 Ill2d 290, 149 NE2d 96; People v. Cook, supra. Upon a thorough examination of the record, we find adequate evidence, including that of identification, to establish defendant's guilt beyond a reasonable doubt.

██ Defendant asserts that the alibi testimony offered in his behalf by several witnesses was sufficient to raise a reasonable doubt of his guilt. He has cited several cases holding that plausible evidence of an alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime charged, and where the entire record reveals reasonable doubt of guilt because of an uncertain identification. People v. Gooden, supra; People v. Kidd, 410 Ill 271, 102 NE2d 141; People v. Ricili, 400 Ill 309, 79 NE2d 509. We have considered the alibi evidence and find it conflicting and internally inconsistent. One basic discrepancy is that the defense witnesses, while testifying in substantial part to the same events, were not in agreement as to the date on which these events took place. It was stipulated that

June 25, 1967, fell on a Sunday, yet defendant thought the events occurred on a Saturday. Two alibi witnesses were unsure what day of the week it was, and another definitely stated it was a Saturday. Moreover, defendant's sister and brother-in-law originally told an altogether different story to the police. Again, this is a matter for the trial court in determining the credibility of the witnesses and the weight to be accorded their testimony. The trial judge obviously did not believe the alibi defense, and we can find no basis in the record to disturb his evaluation.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.