(No. 42759.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* LEE
RHODES WATKINS, Appellant.

*Opinion filed September 29, 1970.*

GERALD M. WERKSMAN and JAY I. MESSINGER, both of Chicago, (ELLIOT M. SAMUELS, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, and ROGER MATELSKI, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

Defendant was indicted in the circuit court of Cook County for attempted murder of Daniel Gaffney. He was represented by private counsel, waived trial by jury and was tried by the court which found him guilty of attempted murder and aggravated battery and sentenced him to a five-year term of probation, a condition of which was that the first year thereof be served at the Cook County jail. Defendant appeals to this court saying that his rights under the fifth and fourteenth amendments to the Federal constitution and section 2 of article II of the Illinois constitution were violated, since the pretrial identification procedure was so unnecessarily suggestive as to deprive the defendant of due process of law. He further contends that the evidence was not sufficient to establish guilt beyond a reasonable doubt and that the trial court erred in admitting certain evidence.

The evidence shows that on the 20th day of April, 1969, at approximately 7:10 P.M. Patrolman Daniel Gaffney had occasion to be travelling northbound in a marked squad car in the vicinity of 1135 South Washtenaw Avenue, when he observed three men standing in an alley. He directed his spotlight on the suspicious group, alighted from his vehicle, and walked toward them, the spotlight remaining lit and pointed in the direction of the men. He asked the individuals what they were doing in the alley. He testified that one of the men, later identified as the defendant, pro-

duced a police sergeant's badge. A brief conversation ensued, after which the patrolman requested more specific identification. He further testified that the defendant then handed him the wallet which contained the badge and Gaffney then requested the defendant's CTA pass. Gaffney further said that defendant then reached into his left side and produce a blue steel revolver and stuck it into Gaffney's chest. A struggle ensued, and Gaffney was wounded in his left shoulder. He fell to the ground and the assailants fled. He returned to his vehicle and called for assistance. A fellow officer responded to the call and drove the victim to a hospital for emergency treatment.

Approximately ten minutes after the shooting, Sergeant Robert Healy arrived at the scene of the incident. He was given a wallet which was found at the scene by another policeman. The wallet contained a Chicago Police Sergeant's badge and an Illinois driver's license and other papers bearing defendant's name. Sergeant Healy inventoried the badge and gave the wallet and its contents to Detective Elwood Egan for a follow up investigation. Sergeant Healy identified the wallet at the trial. Officer Gaffney also identified the wallet as the same one which was shown to him by the defendant. Detective Egan identified the wallet as the one which was given to him by Sergeant Healy. The detective further testified that at the time of his arrest, the defendant admitted that the wallet and contents were his, but stated that he had lost the wallet *two weeks* prior to the date of the shooting. Detective Egan asked the defendant whether he filed a police report with respect to the lost articles, and the defendant responded affirmatively, but an examination of police records by Detective Egan failed to reveal the existence of a report. The parties stipulated that the badge contained in the wallet was returned to its owner, namely Officer Frank Hitzeman, who lost it on March 9, 1969. The wallet and its contents were admitted into evidence over the objection of the defendant's counsel.

Within four or five hours after his arrival at the hospital, Officer Gaffney was given the opportunity to view six to eight photographs of different individuals, and from this group he identified the defendant as his assailant. Early the following morning, the defendant was brought to the hospital, where Officer Gaffney identified him as the individual who shot him. At the trial, Officer Gaffney identified the defendant as his assailant. He indicated that the lighting in the alley was adequate to view the defendant and that he also had the benefit of the squad car spotlight which was pointed directly at the defendant and his accomplices.

The defendant testified in his own behalf that he was visiting friends at the time of the incident and that he lost his wallet containing his driver's license in August or September of 1968, *some six months before the incident.* He further stated that he appeared in traffic court on April 18, 1969, and was forced to pay a fine for failure to produce a driver's license. A copy of the transcript of the proceedings in the traffic court for that date was admitted in evidence.

When Officer Gaffney was first taken to the hospital after the shooting, he was asked by Officer Gallela to describe his assailant. He described him as a male Negro, 6'2" tall, weighing 180 lbs. with a natural hairstyle. Defendant is a male Negro, 5'11" tall, weighing 145 lbs. with processed hair and mustache and a faint goatee.

Defendant further testified that for the period from about 4:00 P.M. until 10:30 P.M. on the day in question he and 8 friends were at the home of Felix and Willie Strong at 5055 West Gladys Street, Chicago, and that he did not leave the party. He stated that he arrived home about midnight and then first learned that the police were looking for him, whereupon he immediately went to the Upstairs Lounge on Fifteenth Street, where the owner of the tavern called the police. Upon the arrival of the police, he was placed under arrest. Defendant identified a second wallet in court as being the one he had in his possession on

April 20, 1969, and among other things, this wallet contained a receipt for a traffic fine dated February 18 and a check stub from work dated April 19, 1969. The defendant further stated that someone was apparently using his driver's license because a ticket was issued to him on October 18, 1968, for which he was not responsible. He asserted his innocence of all the charges brought against him.

Several witnesses, all friends of the defendant, testified that they were present in Strong's home on the date in question and that he was there at the time of the alleged crime.

The defendant contends that the pretrial identification was so wanting in fairness as to deprive him of due process of law and that all testimony relating thereto should have been stricken. In support of this argument he points out that a wallet containing the defendant's name was brought to the complaining witness shortly after the shooting while he was still in the hospital and that shortly thereafter the witness viewed photographs, one of which was of the defendant, and that finally the defendant, while in custody, was brought to the hospital for a one-to-one confrontation, all of these events occurring within a span of some 7 hours. He cites the case of *Simmons* v. *United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, in support of this argument. In the *Simmons* case it was pointed out that a witness may have obtained only a brief glimpse of a criminal or may have seen him under poor conditions and that fleeting opportunity for identification can cause an erroneous identification if the police displayed to the witness only one picture of a single individual who generally resembles the person he saw or if they show him several pictures, among which the photograph of a single such individual recurs or is in some way emphasized. In the case at bar the defendant was initially identified by a photograph. The complaining witness testified that he selected the defendant's photo from 6 or 8 that were shown to him while still in the hospital.

The defendant contends the police report indicates that only one photograph was shown to and identified by the witness which adversely affected all subsequent identifications and primed him for the one-to-one confrontation that was shortly to follow and to make an improper identification.

In the *Simmons* case the court said, at p. 384, "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

This court has held in the case of *People* v. *Johnson*, 45 Ill.2d 38, that the burden of proof is upon the defendant to establish the identification procedure to be so suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The defendant was not in custody at the time of the photographic identification and the complaining witness testified he was shown 6 to 8 photographs of different individuals. The exhibition of the photographs constituted a part of the normal investigative procedures looking toward discovery of a culprit and his apprehension. This court cannot

lose sight of the fact that people who are the victims of crimes of this sort have rights which must also be protected, namely, that orderly investigative procedures must be inaugurated promptly without delay and must proceed without diversion from their purpose to find the guilty person as soon as possible before recollections become hazy and the enthusiasm of pursuit is diverted by subsequent intervening events of a distracting nature.

The contention made by defendant's counsel that a police report indicated that only one photograph was submitted is not borne out by the verbiage of the police report in view of testimony of the complaining witness. The report stated, "A check of the records section of the name of Lee Watkins and address, 1523 South Avers, produced the offender's IR number. A photograph of this subject was obtained and shown to Officer Gaffney and Officer Gaffney identified the photo as the offender that shot him." The statement in the report that the complaining witness identified "a photo" does not establish that other photographs were not shown to the victim.

The face-to-face confrontation between Officer Gaffney and the assailant, accompanied by the conversation between them and the handing of his billfold by the assailant to Officer Gaffney was certainly such close contact as to afford Officer Gaffney sufficient opportunity to observe the assailant. There is nothing in the record to indicate that anyone suggested to the complaining witness that the defendant was a participant in the crime, nor was the defendant's photo especially called to the attention of the witness prior to his clear and unequivocal identification from the police photographs. Based on these circumstances, it is evident that Officer Gaffney's identification of the defendant at the trial was independent of the photograph, and was based on his observations of the defendant at the scene of the shooting. Officer Gaffney was cross-examined closely concerning his identification of the defendant and his opportunity to ob-

serve the defendant at the time of the crime. The emphasis by the defense counsel in their brief on the discrepancy between the description given by Officer Gaffney to his fellow officer of his assailant immediately after the crime and the physical characteristics of the defendant was considerably mitigated by the fact that three of the defendant's own alibi witnesses likewise could not recall whether defendant had a mustache or a goatee. Certainly Officer Gaffney's identification is based upon independent observation by him and satisfies the criteria of *United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and of *People* v. *Blumenshine,* 42 Ill.2d 508; *People* v. *Johnson; People* v. *McMath,* 45 Ill.2d 33.

Defendant has contended that the wallet found at the scene of the shooting should not have been admitted in evidence. The defendant asserts that there was a failure of proof as to the chain of possession concerning the wallet which was found at the scene of the shooting. Defendant overlooks the fact that the complaining witness, Officer Gaffney, established beyond doubt that the wallet was in the possession of his assailant at the time of the incident. This positive identification given by the complaining witness was sufficient foundation for the admission of the wallet into evidence. Testimony of the defendant that he lost his wallet six months before the crime was committed is in conflict with the statement he made to Detective Egan that he lost his wallet two weeks prior to the incident. We cannot see any error in the admission of the wallet in evidence, in view of all the circumstances in this case.

The weight to be given the testimony of the alibi witnesses and inferences to be drawn therefrom are matters to be decided by the trial judge in a case where a jury has been waived. (*People* v. *Renallo,* 410 Ill. 372; *People* v. *Viti,* 408 Ill. 206.) It is fundamental that a reviewing court will not disturb a verdict of guilty on the ground that the evidence is insufficient unless it is so palpably contrary to the

verdict or so unreasonable as to raise a reasonable doubt of the defendant's guilt. (*People* v. *Hoffman,* 45 Ill.2d 221; *People* v. *Mack,* 25 Ill.2d 416.) A trial court is in a more advantageous position to observe the demeanor of the witnesses, evaluate their testimony, and determine questions of truthfulness than a court of review. It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. (*People* v. *Brinkley,* 33 Ill.2d 403; *People* v. *Washington,* 26 Ill.2d 207; *People* v. *Mack,* 25 Ill.2d 416; *People* v. *Cox,* 22 Ill.2d 534.) We have read the testimony of the alibi witnesses and cannot say that the trial court's consideration thereof was contrary to the evidence or so unreasonable as to raise a reasonable doubt of the defendant's guilt.

We have reviewed all of the errors asserted by the defense and it is our conclusion that the judgment of the circuit court should be affirmed.

*Judgment affirmed.*