(No. 42701.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT PERRY, Appellant.

*Opinion filed January 25, 1971.*

UNDERWOOD, C.J., specially concurring.

WALTER W. WINGET II, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT S. CALKINS, State's Attorney, of Peoria, (FRED G. LEACH, Assistant Attorney General, and ROLAND N. LITTERST, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from a post-conviction hearing on the petition of defendant Robert Perry. He was indicted for armed robbery and also indicted in two separate instruments for aggravated battery which grew out of the same incident. He was found guilty as charged in a jury trial by the circuit court of Peoria County and sentenced only for armed robbery for a term of not less than 10 nor more than 20 years. His appeal therefrom to the appellate court is stayed pending our disposition of his post-conviction appeal.

On appeal it is charged that (1) the in-court identification of the defendant by the witnesses was nullified by his out-of-court show-ups; (2) the search of the defendant's home and subsequent admission into evidence of certain articles therein seized violated fundamental concepts of due process; and (3) the conviction and sentence of the defendant on two indictments alleging identical facts of armed robbery and aggravated battery constituted the denial of due process and cruel and unusual punishment.

From the evidence adduced at the trial and at the post-conviction hearing, it appears that on Saturday, October

15, 1966, at about 1:25 P.M., Joseph Perry entered the Peoria Loan Service on Seventh Street and announced a robbery. Within minutes his companion, a taller man, entered, and Joseph Perry took the proprietor Silverstone into a side room, and pistol whipped and tied him up, while the taller man rummaged through the front office for cash. The police, alerted by a merchant across the street, arrived minutes later. As the men started to flee, a police officer shouted, "Halt", and fired his gun. The taller man turned, faced the officer and returned the fire. Both robbers then fled out the rear exit of the building. Joseph Perry was shot by the police and apprehended as he attempted to climb over the back fence, but the taller man escaped.

About 2:00 P.M., that same afternoon, Josephine Robinson, age 69, residing on Sixth Street some two blocks from the Peoria Loan Service, went to her basement and was confronted by a man crouching under a table with his shoes off. He had a gun and told her to keep still and she would not get hurt. They went upstairs, and he remained in her home for approximately two hours while she did her housework under his continuous surveillance. At about 3:45 he left in a cab and she telephoned the police.

At the hospital, the police learned from Joseph Perry's girl friend, Donna Ford, that she, Joseph Perry, his cousin Robert Perry, and Bobbie King all lived together at 618 West First Street. The girl told the police that Joseph Perry and Robert Perry had left the apartment that morning together, and Robert returned later alone. She purportedly described Robert Perry to the police. They immediately went to the First Street apartment but found no one there. They learned from a cab driver, however, that he had taken a man, described similarly, and a woman from that address to the area of the Sands Motel. The police went instead to Freeman Flats, located in the same vicinity, where they had on previous occasions apprehended suspects. Officer Wilson talked to the manager and learned that a man

answering the description of defendant and a woman were registered in Room 6. Officers Walker, Pisano, Short and Wilson went to the door. Officer Walker knocked and a woman asked who it was. Walker replied "Police." According to the testimony of officers Walker, Wilson and Pisano, they each heard the sounds of a window shade going up and a window being raised. After an interval of 15 to 30 seconds, officer Walker then broke down the door and they all entered the small room, 10′ x 12′ in dimensions. Defendant was standing near the door, about 8′ from the window, and, according to the testimony of officer Pisano, defendant had put something in or taken something out of the top dresser drawer. There was an open suitcase with clothing on the bed and clothing hanging up. Defendant was searched, taken into the corridor and handcuffed. The police continued the search of the room, found a gun and clip in the partially opened top dresser drawer and some shells in the girl's purse on the chair beside the bed. The police seized those items and the clothing, and took them and defendant to the station.

About 7:00 P.M., that same evening, defendant was taken to be viewed in a small room with a two-way mirror. Silverstone identified him by his goatee, the cab driver could not identify defendant, claiming the man he drove was younger, and Mrs. Robinson identified defendant by his goatee, his hair style, his new shoes and the greenish colored coat he wore. Some two months later there was another identification involving a 5-man line-up which included Joseph Perry, and Silverstone again identified defendant. Mrs. Robinson was not present at that time. There were also in-court identifications of defendant by Mrs. Robinson, Silverstone and the police officers who exchanged fire with defendant at the Peoria Loan Service.

Defendant denied implication in the robbery and testified that at 1:00 P.M. on the day of the robbery he lunched alone at a specified restaurant. After lunch he returned to

the First Street apartment, packed his clothes and hired a vehicle to move his things over to his girl friend's apartment at Freeman Flats. He arrived there about 3:30 or 4:00 P.M. Defendant described the police entry into the room, their search, and his trying on different clothes at the station show-up that night.

No evidence in mitigation or aggravation was offered except the statement of defendant's counsel that defendant had never been convicted of a felony.

On this appeal from the post-conviction hearing, defendant contends first that the in-court identification by the witnesses was nullified by his out-of-court show-ups and deprived him of due process. This is a "pre-*Wade*" case (*United States* v. *Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926), hence a defendant, without counsel at such confrontation, may establish that he was deprived of due process of law where it appears from a totality of the surrounding circumstances that the identification is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall* v. *Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

Defendant here was identified in court by Mrs. Robinson who had been with him in her home for some two hours, by Silverstone whose company defendant robbed, and by the officers who saw him at the scene of the crime when he squarely faced and fired at them. The fact that there was also an out-of-court viewing of defendant alone does not *per se* taint the in-court identification. (*People* v. *Bey*, 42 Ill.2d 139; *People* v. *Blumenshine*, 42 Ill.2d 508; *People* v. *Martin, ante* p. 331, filed November, 1970.) Here the out-of-court identification occurred the same day as the crime, and was made by Mrs. Robinson on the basis of such distinctive features as defendant's goatee, his processed hair style and his new shoes, which the witness saw him put on in the basement of her home. Silverstone not only identified defendant by his distinctive features at

that show-up, but also identified him again at a line-up with 5 other men. From the totality of those surrounding circumstances it does not appear that the single view at the station the night of the crime was conducive to mistaken identity so as to taint the in-court identification and infringe defendant's constitutional rights.

Defendant further contends that the search of his room violated the constitutional guarantees of due process and freedom from unreasonable search and seizure. The scope of permissible search and seizure without a warrant, pursuant to a lawful arrest, was re-examined by the United States Supreme Court in *Chimel* v. *California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S.Ct. 2034. After a comprehensive review of the case law the court held it was reversible error to have searched all the rooms in the entire house without a warrant, even though the arrest itself was proper. The court stated at p. 768: "The search here went far beyond the petitioner's person, and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification for extending the search beyond that area."

Whether the *ratio decidendi* of *Chimel* is to have a retroactive application has been expressly reserved by the United States Supreme Court. (*Shipley* v. *California,* 395 U.S. 818, 23 L. Ed. 2d 732, 89 S.Ct. 2053; *Von Cleef* v. *New Jersey,* 395 U.S. 814, 23 L. Ed. 2d 728, 89 S.Ct. 2051.) Prior to *Chimel* the court applied the rule that a contemporaneous search incident to a valid arrest is justified where the weapon or evidence is on the accused's person or in his possession and immediate control.

Here, the search was incident to, and contemporaneous with, a lawful arrest and was limited to one small 10 x 12 room. Moreover, when the police broke into that room they saw defendant putting something in or taking something out of the dresser drawer. Hence, it was reasonable to

search that half-open drawer and the purse of defendant's girl friend, which was in plain view on the chair beside the bed. Search and seizure of this character has been sanctioned in *People* v. *Sailor*, 43 Ill.2d 256, and in *In Re Marsh*, 40 Ill.2d 53, 56. In *Sailor*, the court held reasonable the police search of defendant's purse after they saw her put something in it handed to her by one of her companions, and the seizure from it of certain stolen items. The search here was not only within the permissible confines of pre-*Chimel* decisions of the United States Supreme Court but within the tenor and purport of the rule promulgated in *Chimel*, since it was within the area from which defendant could have obtained a weapon or something that could have been used as evidence against him. (395 U.S. 752, 768.) Consequently there was no violation of the constitutional prohibition against unreasonable search and seizure.

Defendant finally claims that he was convicted on two charges of aggravated battery, based on the same facts, in violation of due process and the constitutional prohibition against cruel and unusual punishment. We find this argument entirely without merit. The record shows unequivocally that the judgment order entered by the trial judge sentenced defendant on the jury verdict of guilty only as to the indictment charging armed robbery. There was no impropriety in trying the armed robbery and aggravated battery indictments together since they were based upon the same occurrence. (*People* v. *Duszkewycz*, 27 Ill.2d 257.) However, as in *Duszkewycz*, only one sentence was imposed and that was on the armed robbery indictment—the greater offense. Hence any duplicate recitals in the other indictments were in no way involved in defendant's sentence, and could not conceivably have violated his constitutional rights. Moreover, this court will not disturb a sentence within the statutory range on the mere allegation that it was imposed because defendant demanded a trial. That fact must be clearly established by the evidence

(*People* v. *Moriarty,* 25 Ill.2d 565, 567), and will not be inferred here merely because defendant received a somewhat higher sentence than Joseph Perry who pleaded guilty.

For the foregoing reasons, the judgment of the circuit court dismissing defendant's post-conviction petition is hereby affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE UNDERWOOD, specially concurring:

I agree with the court's opinion with the exception of its implication that petitioner could not have been sentenced for both the armed robbery and aggravated battery charges. For the reasons set forth in my dissent in *People* v. *Whittington,* 46 Ill.2d 405, I believe concurrent sentences for both offenses would have been proper.