The People of the State of Illinois, Plaintiff-Appellee, *v.* James Oliver Nudo, Defendant-Appellant.

(No. 11244;

Fourth District—April 16, 1971.

CRAVEN, J., concurring in part and dissenting in part.

Robert S. Cohn, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Bruce D. Locher, of counsel,) for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

This is an appeal by the defendant from a conviction of armed robbery in a jury trial and a sentence to the penitentiary for a term of not less than ten nor more than thirty years. The defendant did not testify. His

connection with the robbery depends upon the integrity of the identification made of him by the two girls who were in the liquor store at the time of the robbery.

The robbery occurred about 8 P.M. Both girls were within a couple of feet of the robber at one or more times and the establishment was well lighted. Mary Cox was at the check-out counter and the defendant came to that counter two or three times before she started to add up and ring up. At this point, he pointed a gun at her and demanded and received the bills in the cash register. Mary then alerted Lana Altabaugh that a robbery had taken place and the police and the owner of the liquor store were called. Both girls gave a description of the robber to the police on their arrival.

Mary Cox testified, "Yes, and by that description, they said they thought they knew who it was and they took us to the police station and the first picture they showed us, we identified." Defense counsel requested a repetition and she then said, "They asked us to give an identification and so both of us gave an identification and then they said they thought they knew who it was, and they took us to the police station and the first picture we looked at was the one we identified. We didn't have to look at any more pictures; we knew who it was". On cross-examination she was asked whether or not she had made this identification after the police officers said, "we have the man who did this". She answered, "No, he didn't say they had the man; he said they thought they knew who it was".

"Q. They thought they knew, and they gave you one picture and had you look at it?
A. Yes.
Q. Is the basis of your identification here in court based upon this photographic identification?
A. No, not altogether.
Q. Was it partially?
A. I wouldn't say that, no."

Lana Altabaugh testified that she talked to the defendant two or three times, once at the freezer counter and once near the meat case and again at the back of the store. When the police came she gave a description of the defendant, and shortly got in the car and went down to the police station and was shown the photograph. This was some ten or fifteen minutes after the occurrence. On cross-examination she was asked:

"Q. Did you have an independent recollection of the description of the defendant?

A. I will never forget what he looked like.

Q. And you made an identification from a photograph, is that correct?

A. Yes, I did.

Q. This was made after the police officer said, 'We think we have the man', is that right?

A. No, they didn't say it was him.

Q. They thought he was a suspect, right?

A. Yes.

Q. And they showed you one picture?

A. Yes."

On redirect, she was asked:

"Q. Was there anything about the defendant that you noted?

A. Yes, his eyes.

Q. What about his eyes?

A. They were beady and odd, and I will never forget them."

On cross-examination, she was asked whether she told the police officers that his eyes were a distinguishing characteristic and she answered, "No".

The police officer who talked with the girls at the scene of the crime and took them down to the police station testified:

"When I showed them this picture first, they identified the subject in the picture. I didn't figure it was necessary to show them anymore.

Q. You also had a conversation with them beforehand, didn't you?

A. Yes.

Q. And you told them that you thought you knew who it was, is that correct?

A. Yes, sir.

Q. Well, would it be safe to say that you had your subjects pre-conditioned for this identification?

A. No, sir."

Both girls identified the defendant in the courtroom.

Prior to the in-court identification, defense counsel requested a hearing outside the presence of the jury to determine the basis of the identification, and asserted that the display of a single photograph under the circumstances in this case amounted to impermissible suggestion. The prosecution objected to such a hearing, asserting that the identification procedure went to the weight of the evidence rather than to its admissibility. The trial court sustained the objection and refused the hearing to ascertain the basis of the identification.

While the prosecution's assertion is erroneous, the essential issue for review is whether it was reversible error to permit the in-court identification by the witnesses without first holding a hearing out of the presence

of the jury to determine the admissibility of the identification testimony. Defendant cites *United States v. Wade*, 18 L.Ed.2d 1149, 388 U.S. 218 and *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152. In each of these cases the reviewing court remanded the case for further hearing in the trial court to determine whether the in-court testimonial identification of the defendant had an origin independent of a possibly suggestive pre-trial identification.

Such disposition in each case, however, was explicitly based upon the conclusion that the reviewing court could not reach "an informed judgment" as to the presence or absence of an independent origin of the in-court identification free from any improper suggestion made prior to trial. *Wade*, 18 L.Ed.2d, p. 1166.

*Blumenshine* states as its premise that the reviewing court must first determine whether the confrontation, or as here, a view of a photograph, constituting the pre-trial identification, "\* \* \* was so unnecessarily suggestive and conducive to irreparable mistaken identification" that defendant was denied due process of law. (See *Stovall v. Denno*, 18 L.Ed.2d at 1206, 388 U.S. at 301—302.) In *Blumenshine* the witnesses were taken to the police station three weeks after the robbery and asked to view the defendants separately and then together. They were told that the suspects were in custody. At this same time the victims of other crimes were present to view these suspects. Since the defendants were in custody there was, in fact, no "necessity" for such view and the procedure was held improper as there was no reason which prevented a "line-up". In vacating the judgment and remanding for a hearing, the court said:

"The record \* \* \* does not permit an 'informed judgment' as to whether the witnesses' identifications of appellant were based on observations independent of and uninfluenced by the improper identification proceedings at the police station."

It accordingly vacated the judgment and remanded for a hearing by the trial court to determine whether the identifications had an origin independent of such viewing.

The Supreme Court has similarly vacated judgment or reversed and remanded in *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634; *People v. Robinson*, 46 Ill.2d 229, 263 N.E.2d 57; *People v. Lee*, 44 Ill.2d 161, 254 N.E.2d 469. It is a common characteristic of each of such cases that there was no necessity for a single confrontation as defendant was in custody and the line-up procedure was readily available.

In *Holiday*, there was a pre-trial motion directed to the suppression of the identification testimony of a witness who had been shown a colored photograph of defendant. The motion was denied. The record showed

that the witness was distraught at seeing her husband shot, that she saw the defendant but for a few seconds in poor light, and her description of defendant was focused on clothing shown in the colored photograph. The defendant had a substantially unimpeached alibi. The court did not reverse and remand for failure to hold the hearing on the motion to suppress. The court considered that the procedure concerning the photograph was unfairly suggestive but did not foreclose the possibility, however, that the identification had an independent origin. It therefore vacated the judgment and remanded for hearing on other circumstances possibly bearing on admissibility.

In *Robinson*, a hearing was held upon a pre-trial motion to suppress identification, but the court denied defendant's offer of proof and so restricted cross-examination concerning the victim's description given the police and any suggestive police influence, that the court said that it could not determine from the record whether there was suggestive influence at the pre-trial confrontation. The court there reversed and remanded for a new trial because the restricted cross-examination prevented a fair hearing upon the issue.

In *Lee*, the record before the court contained no evidence that the pre-trial confrontation was not suggestive. There the court vacated the judgment and remanded the cause for a hearing at which the State might establish by clear and convincing evidence that the in-court identification had an independent origin.

In contrast, where the Supreme Court could ascertain from the record that the in-court identification had an independent origin, it acted upon such record and did not remand for further hearing. *People v. Martin*, 47 Ill.2d 331, 265 N.E.2d 685; *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330; *People v. Watkins*, 46 Ill.2d 273, 263 N.E.2d 115, and *People v. Palmer*, 41 Ill.2d 571, 244 N.E.2d 173.

■■ In *Martin* and *Perry*, it is said that there is no violation of due process *per se* in a pre-trial confrontation or view, and that although the procedure may be suggestive the issue of admissibility is determined by the presence or absence of an independent origin for the in-court identification. See also *People v. Thomas*, 127 Ill.App.2d 444, 262 N.E.2d 495; *People v. Davis*, 126 Ill.App.2d 255, 261 N.E.2d 771.

In *Simmons v. United States*, 19 L.Ed.2d 1247; 390 U.S. 377, the Supreme Court first considered questions arising where witnesses were shown photographs in the investigative procedure to determine possible suspects where no person had been taken into custody or charged with the offense. The court, noting the necessity of prompt identification of possible suspects following a crime, refused to prohibit such a procedure

as a matter of constitutional requirement, but stated that each case concerning such technique must be determined upon its facts, and that convictions based upon eye-witnesses' identifications at trial following pre-trial recognition by photograph:

"* * * will be set aside on that ground *only* if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Emphasis supplied).

Upon the record there present, the Supreme Court affirmed the conviction after considering the opportunity for the witness to observe the defendants, taking into account the evidence concerning the duration of the time of observation, the lighting conditions, the lapse of time between the offense and the photographic recognition, and the presence or absence of unfair official suggestion. The court stated that cross-examination was an appropriate method of testing the possible errors which might result from the preliminary photographic view. (See also *People v. Watkins*, 46 Ill.2d 273, 263 N.E.2d 115.) That opinion did not suggest that there was a constitutional requirement of a hearing independent of the trial to determine admissibility of the evidence.

Upon such authority, the Illinois Supreme Court affirmed convictions where the record showed that the witnesses had a good opportunity to observe the defendant. *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330; *People v. Martin*, 47 Ill.2d 331, 265 N.E.2d 685; *People v. Palmer*, 41 Ill.2d 571, 244 N.E.2d 173 and *People v. Watkins*, 46 Ill.2d 273, 263 N.E.2d 115.

We consider the record in this case under the standards in the authorities noted. The showing of the photograph at issue was an immediate investigatory step to learn the identity of a possible offender. No one had been taken into custody or charged with the offense. The witnesses, Cox and Altabaugh, observed the defendant in a well-lighted store where defendant remained from five to ten minutes. He was not masked or disguised. While obtaining the money defendant was within two feet of the witness, Cox. Defendant cross-examined the eye-witnesses from the police notes concerning the physical descriptions given to the investigating officer. No inconsistency between the descriptions given and defendant's actual physical characteristics is shown. While he examined concerning the height and coloring, the record shows that the witnesses stated that they could get no impression of such facts from the photograph. In contrast with *Robinson,* the abstract shows no restriction upon cross-examination and no offer of proof by defendant which was denied.

■■ The witnesses stated their recognition of the defendant in the photo-

graph within thirty minutes of the robbery. While the investigative procedure of showing one photograph was not the most sophisticated, each of the witnesses stated that it did not seem necessary to look at more since they had recognized the first one shown. The statement of the investigating officer who took the defendant's description from the witnesses that he thought he knew who the robber was, does not suggest a devious design to unduly influence the witnesses. The absence of a design to influence the witnesses is a test of the propriety of the investigation. (*People v. Martin,* 47 Ill.2d 331, 265 N.E.2d 685.) We may consider the distinction arising between these facts and police statements made concerning a man who is already in custody.

■■ While it is undoubtedly a preferred procedure for a trial court to grant a preliminary hearing to determine the admissibility of in-court identification testimony, upon the facts of this case we cannot say that the trial court committed reversible error in refusing to exclude the testimonial identification, or in denying defendant's motion for a hearing upon such issue outside of the presence of the jury.

■■ Defendant urges that the sentence is excessive where there is no record of prior conviction for felony. The abstract shows that shortly prior to this offense, defendant was returned to custody as a Federal parole violator. The defendant has progressed from misdemeanor to armed felonies and nothing suggests an elective rehabilitating experience under the Federal system. The abstract does not contain any mitigating evidence. Upon such facts, there is no clear abuse of judicial discretion.

Defendant made a motion in the trial court for reconsideration of the sentence imposed and submitted affidavits that the State's Attorney had negotiated pleas in other cases of armed robbery and had recommended sentences of three to ten years which were accepted by the court, and that the plea negotiation in this case included a proposed recommendation of three to ten years, but that after trial and conviction the State's Attorney recommended a sentence of fifteen to twenty-five years. It is clear that the trial judge reached his own conclusions concerning the sentence imposed. There was no judicial participation in the plea negotiation. Absent misleading representation, the out-of-court non-judicial negotiations between experienced counsel are not a matter of judicial review.

A final issue sought to be tendered by this appeal relates to alleged prejudice of a juror discovered after trial. The juror in question was accepted by both parties and that which is asserted as constituting prejudice was not ascertained during the *voir dire* examination. This record wholly fails to sustain the burden required to establish that the asserted

claim in any way affected the deliberations of the jury or denied the defendant a fair trial before an impartial jury.

The judgment below is affirmed.

Judgment affirmed.

SMITH, P. J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part.

I concur with my colleagues that it would have been preferred procedure for the trial court to grant a preliminary hearing to determine the admissibility of the in-court identification testimony. However, upon this record, this refusal cannot be said to constitute reversible error.

The majority conclude that the sentence imposed was not related to the recommendation of the prosecutor. I am not so persuaded. The record is susceptible to an interpretation that an enhanced penalty was recommended because the defendant elected to stand trial. If such a recommendation does, in fact, result in an enhanced penalty because a defendant elects to stand trial, such is not permissible. (*People v. Moriarty* (1962), 25 Ill.2d 565, 185 N.E.2d 688.) In *People v. Scott* (4th Dist. 1969), 117 Ill.App.2d 344, 253 N.E.2d 553, we quoted with approval language to the effect that one charged with a criminal offense is absolutely entitled to have a jury determine his guilt or innocence and that the exercise of the right should not result in an enhanced penalty. This record presents this issue.

A hearing in aggravation and mitigation was held on August 6, 1969. At that hearing, in response to the trial court's inquiry as to whether counsel had a "statement" to make with reference to sentencing, the prosecutor discussed the offense and the defendant's prior record, consisting of criminal trespass to a motor vehicle and a Dyer Act violation, and concluded with a specific recommendation of a sentence of from fifteen to twenty-five years.

Defense counsel characterized this recommendation as "vindictive" and "ridiculous". He expressed the opinion that the minimum sentence should be two years but made no specific recommendation as to the maximum. The court thereupon sentenced the defendant to a term of not less than ten nor more than twenty years. A notice of appeal was filed August 8, 1969, by the clerk of the circuit court. On September 4, 1969, a motion was filed by the defendant to reconsider the sentence.

That motion asserted the disparity of this sentence when compared to other sentences for the same offense after plea negotiation. Affidavits of defense counsel in two cases were attached indicating that the recom-

mended sentence by the same prosecutor prior to and on the trial date would have been a ten to twenty-year sentence, whereas, upon a negotiated plea, a sentence of three to eleven years was imposed.

The motion to reconsider further asserted that the prosecutor had offered to recommend a sentence in this case of not less than three nor more than ten years upon a plea of guilty. That assertion in the motion was supported by affidavit of defendant's trial counsel. The motion asserted that the recommendation made after trial was because the defendant elected to stand trial.

Sentencing, at best, is a difficult assignment for the trial court. In his quest for an appropriate sentence he should have the fullest possible information. The American Bar Association Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968), in section 5.3, suggests:

"(c) Unless asked by the sentencing court, or unless the product of plea discussions or agreement, the prosecutor ordinarily should not make any specific recommendations as to the appropriate sentence."

The motion to reconsider the sentence presented to the trial court for its determination the question of the excessiveness of this sentence. The trial court did not act upon the motion. While the sentence was imposed on August 6, 1969, and a notice of appeal was filed on August 8, 1969, and the motion to reconsider was filed on September 4, 1969, another notice of appeal is found in the record and it is indicated to have been filed on September 9, 1969.

In *People v. Myers* (1970), 44 Ill.2d 327, 255 N.E.2d 392, upon a post-conviction appeal, the Supreme Court considered the question of a different recommendation upon a plea of guilty as compared to a trial, and stated that the fact that the State's Attorney might have indicated he would recommend a shorter sentence if the defendant would plead guilty did not amount to a *per se* denial of due process.

This record indicates that there is an undisposed of motion to reconsider the sentence. The record, as it stands, further indicates a willingness by the prosecution to recommend a sentence of three to ten years upon a plea of guilty. The record shows a recommendation by the same prosecutor of not less than fifteen years as a minimum and twenty-five years as a maximum upon the conclusion of a jury trial. As I view it, the trial court had jurisdiction to reconsider this sentence and the same should have been reconsidered and the motion disposed of in the trial court. Such procedure would then make the record clear as to whether the trial court reached a judgment as to sentence independent of that recommended by the prosecution.