THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. SLEEZER, Defendant-Appellant.

Second District   Nos. 75-347, 75-348 cons.

Opinion filed April 21, 1977.

Ronald A. Gullstrand, of Aurora, and Eilert & Morrow, of Geneva (Robert J. Morrow, of counsel), for appellant.

Dallas Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with violation of section 3 (licenses) and section 5(A) (requiring inspections) of the Meat and Poultry Inspection Act (Ill. Rev. Stat. 1973, ch. 56½, pars. 303 and 305(A)). He was convicted and fined $1,000 on each charge.

The defendant contends in this appeal that the court erred in denying his motions to dismiss the complaints for failure to comply with section 19.1 of the Meat and Poultry Inspection Act (Ill. Rev. Stat. 1973, ch. 56½, par. 319.1) and in denying his motion to suppress certain statements elicited in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. ·Ct. 1602.

He also contends he was not proven guilty beyond a reasonable doubt of knowingly violating the licensing provision (section 3) or the inspection provision (section 5(A)) of the Meat and Poultry Inspection Act.

Section 19.1 of the Meat and Poultry Inspection Act provides as follows:

"Each State's Attorney to whom the Director reports any violations of this Act, shall cause appropriate proceedings to be instituted in the proper courts without delay and to be prosecuted in the manner provided by law. Before any violation of this Act is reported to any State's Attorney for the institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views before the Director or his designated agent, either orally or in writing, in person or by attorney, with regard to such contemplated proceeding." Ill. Rev. Stat. 1973, ch. 56½, par. 319.1.

For an appreciation of the issue raised by the defendant under this section of the Act, it is necessary to relate the developments immediately preceding and following the defendant's arrest.

George Snyder, an inspector with the Department of Agriculture, testified at the defendant's trial that he had conducted an unobserved surveillance of the defendant's farm on July 2, 1974, and again on July 7, apparently in connection with suspected violations of the Meat and Poultry Inspection Act. On July 12, Snyder applied to the Kendall County State's Attorney for a search warrant to search defendant's farm premises, which search warrant was granted. Armed with this search warrant Snyder and another inspector employed by the Department of Agriculture, accompanied by two Illinois State police officers and four newspaper reporters, went to defendant's farm on Saturday, July 13, for the purpose of executing the search warrant and developing evidence with regard to suspected violations of the Meat and Poultry Inspection Act. This was the first contact of a representative of the Department of Agriculture with the defendant. An Illinois State trooper, Officer Bolerjack, in full uniform and armed, served the defendant with a copy of the search warrant when the party arrived at the farm. Inspector Snyder then told the defendant they had come to inspect the premises "for apparent violations of the Meat and Poultry Act." The defendant agreed to show the party around the farm. While they were walking around the farm making their inspection, Mr. Snyder asked the defendant questions about his operation and testified in court that the defendant "answered everything we, you know, that we asked him." Prior to the questioning defendant had not been advised by anyone of his right to remain silent, that his answers could be used against him in a court, or that he had a right to consult with an attorney before answering any questions asked by the Department of Agriculture employees.

Snyder testified at the trial that during the inspection of the premises he told the defendant he thought "there was some apparent violations of the law" and that the defendant said he "did not desire to be licensed with our department because he could not operate on the same basis on which he was operating." Snyder testified that the defendant did not ask for a hearing at that time and he [Snyder] did not feel it was necessary to offer a hearing under these circumstances. The defendant testified he did not tell Snyder that he did not want to be licensed as a livestock slaughterer and that Snyder never at any time informed him he had a right to a hearing.

After making a thorough search of the premises and taking pictures— which indicated that slaughtering was going on at defendant's premises— the inspectors left the premises without making any arrest.

On the following Monday, July 15, Snyder went to the Kendall County State's Attorney's office and applied for arrest warrants based on

complaints reciting certain violations of the Food and Drugs Act, including the two charges of which the defendant was later convicted.

Prior to trial defense counsel moved to suppress any oral statements or admissions made by the defendant to the Department of Agriculture inspectors on the occasion of their inspection of his farm, on the ground that such statements were elicited from the defendant in violation of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The motion was denied and is one of the bases of appeal here. The defendant also moved to dismiss the charges because of a violation of section 19.1 of the Meat and Poultry Inspection Act, cited above. This motion was also denied and is another basis of appeal.

Regarding the *Miranda* question, we do not believe the situation here comes within the spirit and intent of the cases wherein statements or confessions have been suppressed for failure to comply with the strictures of *Miranda*. That case clearly dealt with custodial interrogation and we do not consider that the defendant here was in custody or under restraint in any way during the conversation he had with Snyder and his associate, Kettlecamp, while he was walking around the farm with them. It is true, of course, that an armed police officer served the search warrant and was present, at least in the background, during the inspection of the premises. Testimony of the police officer, Bolerjack, however, indicates that he and his fellow officers played no part whatsoever in the questioning of the defendant and did not intrude in any way in the conversation. Bolerjack testified he had no direct conversation with the defendant except at the outset, when he asked the defendant if he was Charles Sleezer, and upon receiving an affirmative answer, served him with the search warrant. Otherwise, he testified, he took no part in the conversation and remembered only a part of it, as he was taking pictures of the premises while Snyder was talking with the defendant. The defendant was walking around his own fairly extensive premises during the conversation with Snyder and his colleague, showing them the various operations of the farm. As Snyder testified there was no thought at that time of arresting the defendant. Officer Bolerjack testified no *Miranda* warnings were given the defendant because he was not being arrested. Under these circumstances we think the failure of Snyder or Officer Bolerjack to give the defendant *Miranda* warnings was logical and *Miranda* warnings were not required or even appropriate.

The defendant cites the case of *People v. Baugh* (1974), 19 Ill. App. 3d 448, as supporting his contention as to the necessity of *Miranda* warnings under the circumstances of the case before us. In *Baugh*, however, the defendant had first been arrested and taken to jail on a charge of theft and forgery. The authorities called one Shonkwiler, attorney for the victim, and said the defendant had to be identified. Shonkwiler replied that he

could not identify the defendant, but the victim, Miss Tatman, could. Due to weather conditions and Miss Tatman being 93 years old, the defendant was taken to her residence by the police officers, together with two other men who were with the defendant when he was arrested. Miss Tatman immediately identified the defendant as the perpetrator of the forgery and Shonkwiler then showed him a certain check involved in the forgery which the defendant admitted he had endorsed and cashed at the local bank. Shonkwiler also asked if the defendant could make restitution and the defendant answered he possibly could do so. The defendant was indicted for theft and deceptive practices and moved to suppress the inculpatory statements made to attorney Shonkwiler in the presence of the police officers. The appellate court for the Fourth District held that the questioning of the defendant, while done by attorney Shonkwiler, was done by him as an instrumentality of the police and since no *Miranda* warnings had been given and the defendant was in custody, his statements were inadmissible.

■■ We do not regard the *Baugh* case as apposite to the case we consider here. The defendant in the *Baugh* case had been arrested and was in custody at the time of the questioning. Moreover, the physical circumstances were entirely different. In the *Baugh* case the defendant was in a room in the victim's house when the questioning was done, whereas in the case before us the defendant was walking around his own farm, there was no threat of arrest and the police officer, Bolerjack, testified he was not even listening to the conversation between Snyder and the defendant, as he was busy taking pictures. Since the defendant was not under arrest and was not in any way confined but was walking around his own farm during the questioning, we do not regard the case at hand as being subject to the requirements of *Miranda*. The basic requirement for invoking *Miranda* is that the defendant be in custody or that the questioning has changed from the investigatory to the accusatory stage at the time of the making of the inculpatory statement. The court in that case said, in stating the gist of the case:

> "Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602.

Since the defendant was not in custody here, we believe the trial court's denial of the motion to suppress the defendant's statements made to Snyder was correct, as the *Miranda* warnings were not required.

We turn now to another basis of this appeal—the contention that the

provisions of section 19.1 of the Meat and Poultry Inspection Act must be complied with before there can be a valid prosecution under sections 3 and 5 of the Act, that these provisions were not complied with and therefore, the prosecution should have been dismissed.

The State contends that the inspection visit to the defendant's premises by Snyder and his associates, accompanied by two police officers and four newspaper reporters, while other members of the public (allegedly customers of the defendant) and their children were milling about the premises, coming and going, and the conversation between Snyder and the defendant while he was showing the party the operation of the farm and the police officers were snapping pictures, amounted to the preliminary hearing required under section 19.1. The State asks what was the use of a more formal hearing when the defendant said that he did not desire to be licensed with the Department of Agriculture because they would not allow him to operate on the basis on which he was presently operating? The State contends that, "once having obtained the defendant's views with regard to his violations of the Act there was no purpose to be served by any further informal proceedings under the Act."

Moreover, the State says, the conviction should be affirmed even if the provisions of section 19.1 were not complied with since the statute does not mandate what procedure should be followed in the event the Department fails to comply with the provisions. Thus, the State argues, in the absence of a specific statutory mandate or any decisions to the contrary, the State should not be penalized by dismissal of the case.

We have some difficulty with this argument by the State. The statute in question must be taken as having some purpose—it cannot be treated exactly the same as if it did not exist. It is in mandatory terms—"shall be given appropriate notice and an opportunity to present his views * * *." Moreover, it is in a form which creates, as it were, a condition precedent for prosecution: "Before any violation of this Act is reported to any State's Attorney for the institution of a criminal proceeding * * *." Also, the word "contemplated" in the phrase "the person against whom such proceeding is contemplated shall be given appropriate notice * * *," clearly indicates a much less precipitate event than the sudden invasion of the defendant's premises with four newspaper reporters and armed police officers, which occurred here. Was this an appropriate notice or did the defendant have "an opportunity to present his views"? Note that the visit to the defendant's premises was made on Saturday. Snyder applied for a warrant to arrest the defendant on the following Monday morning. No time was given to either the defendant or the authorities to reflect and to try to arrive at some sort of accommodation such as is manifestly contemplated by the language of the statute. Under the exigencies of the described occasion anything the defendant said might be and probably

would have been a snap judgment caused by emotional stress, not a considered judgment. Finally, the statute says the defendant's views may be given to the Department "either orally or in writing, in person or by attorney." This language clearly implies a more formal process than the inspection visit in this case allowed for. How, in fact, could the defendant have availed himself of the services of an attorney under the circumstances which occurred here? He had no opportunity whatever to do so and obviously if the "hearing" in question was the unannounced inspection visit he could not have had any opportunity to present his views in writing.

■■■ We think there can be no question but that section 19.1 was not complied with. The fact that it does not anticipate and provide for its violation by the Department's employees is no reason why it should be ignored and given no effect. Obviously the legislature recognized the difficulty and the judgment factors involved in the prosecution of certain aspects of the Meat and Poultry Inspection Act which might involve otherwise completely law abiding farmers in a criminal prosecution for violation of a complex law which their background and lifetime habits made it difficult for them to understand. We think the statute in question was designed to prevent precipitate and arbitrary prosecutions and the fact that the authorities did not comply with it does not render the law a nullity. The only way we can give any meaning to section 19.1 is to hold that it requires its provisions to be observed before a prosecution for certain violations of the Act is valid.

The judgment of the circuit court of Kendall County is reversed.

Judgment reversed.

SEIDENFELD and GUILD, JJ., concur.