THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WILLIAM "BILL" PETTY, Defendant-Appellee.

Fifth District   No. 76-456

Opinion filed October 13, 1977.—Rehearing denied December 15, 1977.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Keith Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Michael J. Rosborough and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, and Carol A. Harmon, research assistant, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by the State from an order of the circuit court of Montgomery County suppressing certain incriminating admissions made by defendant, William Petty. The issue on appeal is whether defendant effectively waived his constitutional rights, especially his right to the presence of counsel, prior to his making these admissions so as to make these statements admissible.

A five-count information was filed October 8, 1975, charging this 81-year-old defendant with various acts of sexual misconduct involving an eight-year-old girl. The exact nature of these charges is unknown to this court since the information was not made a part of the record on appeal. From the docket minutes of the trial court, it appears that defendant was arrested shortly thereafter pursuant to an arrest warrant also issued on October 8. Defendant appeared in court the following day and the public defender was appointed to represent him. Defendant was released on bail on October 10 and arraigned October 14.

On October 17, 1975, defendant was driven to Springfield by the Chief Deputy Sheriff of Montgomery County, William James Moore, for the purpose of submitting to a polygraph examination to be administered by an employee of the Illinois Bureau of Identification. After the test was concluded, defendant made the admissions in question in the presence of Deputy Sheriff Moore in response to questioning by the examiner. Deputy Sheriff Moore testified concerning these admissions at the preliminary hearing. After hearing this testimony, as well as that of the child, the court found probable cause as to three of the counts of the information and indicated that the matter should go before the grand jury. On April 28, 1976, the grand jury returned a two-count indictment charging defendant with indecent liberties with a child and contributing to the sexual delinquency of a minor (Ill. Rev. Stat. 1975, ch. 38, pars. 11—4(a)(3) and 11—5(a)(4)). Defendant subsequently filed a motion to suppress confessions, admissions or statements which was allowed after a full evidentiary hearing.

Defendant's motion to suppress asserts that the instant statements and admissions were obtained in violation of his constitutional rights and were not made voluntarily, knowingly and intelligently. It recounted the factual situation surrounding the giving of these incriminating statements to support its assertion. From our examination of the motion, defendant's argument at the suppression hearing and the brief filed in this court, we understand defendant's position to be that in view of the fact that defendant knew that there was an agreement that the polygraph results would not be used against him in court and that he was not advised again of his *Miranda* rights (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) when the nature of the inquiry changed from a

polygraph examination to an interrogation for evidentiary purposes, his choosing to answer the questions was not a waiver of his right to the assistance of counsel. The trial court apparently agreed. The court's order states: "Motion to suppress allowed because defendant was not advised of right to counsel and counsel was not advised when examination was made in presence of deputy after the polygraph exam."

The State, on the other hand, contends in this appeal that under the facts and circumstances of this case, as revealed by the evidence at the suppression hearing, the defendant must be found to have waived his right to the assistance of counsel and to have made voluntarily the incriminating statements, and that, therefore, the trial court's order is against the manifest weight of the evidence.

At the suppression hearing, in order to meet its burden to prove the voluntariness of the statements (see Ill. Rev. Stat. 1975, ch. 38, par. 114—11), the State presented the testimony of two witnesses, IBI polygraph examiner, Mr. F. A. Paoletti, and Deputy Sheriff Moore. It also offered two exhibits which were admitted without objection.

Mr. F. A. Paoletti testified that he worked for the Illinois Bureau of Identification and that he came in contact with defendant on October 17, 1975, at the Bureau's crime lab in Springfield. He stated that prior to having any conversation with defendant or conducting the polygraph examination he gave him a Miranda constitutional rights form which defendant read in his presence. Mr. Paoletti recounted that he explained each right from memory and testified more specifically that he advised defendant that he had a right to remain silent, that he had a right to have an attorney present and that anything he said could be used against him in a court of law. In his estimation, defendant appeared to understand these rights. Mr. Paoletti further stated that defendant placed his initials after each segment of the Miranda form and signed at the bottom to indicate he understood his rights. Mr. Paoletti signed as a witness. People's Exhibit 1 was identified as the form to which this testimony referred. Mr. Paoletti indicated that in his presence defendant at this time also read and signed a form consenting to the polygraph examination, identified as People's Exhibit 2. According to the remainder of Mr. Paoletti's testimony on direct examination, no one threatened or used any physical force or other form of coercion on defendant. He was neither promised anything nor told that he had to talk with Mr. Paoletti or submit to the examination. Defendant never indicated that he desired to see his attorney, to discontinue a conversation or stop any questioning. Mr. Paoletti testified that after being advised of his Miranda rights, defendant volunteered a statement to him which he later repeated in the presence of Deputy Sheriff Moore.

People's Exhibit 1, the rights and warnings form, fully complies with

the procedural safeguards dictated by the *Miranda* decision to assure that one is accorded his privilege against self-incrimination. In addition, it informs the reader that he can refuse to answer any questions or stop giving a statement at any time he wishes. The exhibit corroborated Mr. Paoletti's testimony relative to the initialling and signing of the form to signify defendant's understanding of his rights. People's Exhibit 2 also bears defendant's signature.

On cross-examination, Mr. Paoletti agreed that the purpose for his appointment with defendant was the taking of a polygraph examination. He also stated that when an examination is conducted no one but the subject and the examiner is allowed in the room, including the subject's attorney. His cross-examination testimony clearly reflected the timing of defendant's admissions. He testified that defendant initially made incriminating statements after receiving the warning but prior to the polygraph examination; these statements were repeated after the examination in the presence of Deputy Sheriff Moore. Mr. Paoletti testified that he called the deputy sheriff into the room for the purpose of witnessing the statements and further stated that he has incriminating statements made during the course of examinations witnessed by a police officer if the statements are relevant to the issue upon which the person is being examined. Mr. Paoletti did not believe that Deputy Moore repeated any *Miranda* warnings prior to his listening to defendant's answers.

Deputy Sheriff Moore testified that he was present in Mr. Paoletti's office when defendant made incriminating statements in response to Mr. Paoletti's questioning. He agreed with Mr. Paoletti that there was no force, coercion, threats or promises made to induce the statements. He also agreed that defendant never indicated any reluctance to speak or a desire to consult with his counsel. In response to the question whether defendant appeared to be under the influence of any intoxicant or narcotic, he stated that he had conversed with defendant during the drive to Springfield and that he had seemed perfectly normal. Defendant did not appear to the deputy sheriff to be suffering from any learning disability or retardation.

On cross-examination, Deputy Sheriff Moore testified that he transported defendant to Springfield for the purpose of his taking a polygraph examination. The deputy sheriff was not allowed in the room during the course of the examination, but he entered the room later on Mr. Paoletti's request that he come in to hear something. At this time, Moore did not read any *Miranda* warnings to defendant or advise him of his right to remain silent.

The hearing concluded with defendant's attorney, the public defender, arguing in support of the motion. He made clear that the motion was directed only at the statements made in the deputy sheriff's presence.

Counsel stated that prior to defendant's going to Springfield, counsel and the State's Attorney had agreed that the polygraph results would not be used in court absent some later stipulation. The public defender sent his client to Springfield for the purpose of taking a polygraph examination, not for the purpose of an interrogation in the presence of the deputy sheriff. The defendant believed that any information given would not be used against him. Defendant's attorney further argued that in his opinion, under these circumstances, defendant could not distinguish between what was a waiver of rights for a polygraph test and a waiver for further questioning. It was therefore incumbent upon the deputy sheriff when he entered the picture to rewarn the defendant and advise him that the purpose of questioning had changed.

The court thereafter announced that the motion was allowed, making comments consistent with the language of the order quoted above. In response to a question from the court, defendant's attorney stated that he did not accompany defendant to Springfield because he had been there before and never been allowed into the examination room.

■■ The State has accepted without dispute that the situation involved in this case is one which required that defendant receive *Miranda* warnings prior to making any statements. We note that in the recent case of *People v. McCue* (2d Dist. 1977), 48 Ill. App. 3d 41, 362 N.E.2d 760, under circumstances similar to those present here with respect to voluntary submission to a polygraph examination, the court, relying upon *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711, held that a confession made to a polygraph examiner subsequent to an examination was not inadmissible because of the examiner's failure to administer *Miranda* warnings. The court concluded that the warnings were unnecessary since defendant was not in custody or otherwise deprived of his freedom of action in any significant way (see *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612) in view of the fact that his freedom to depart was not restricted during or after the interrogation. We, however, decline to view this case in that manner. Unlike the defendant in *McCue* and *Mathiason*, defendant here had been formally charged with a crime and arrested prior to the time of his examination. Any freedom to depart from the lab was a result only of his admission to bail. The questioning was related to an accusatory rather than investigatory stage of proceedings; hence, the protection of *Miranda* warnings was required. See *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612 (n. 4 and text); *People v. Sleezer* (1977), 47 Ill. App. 3d 969, 973, 362 N.E.2d 1071, 1074.

■■ ■ Defendant contends that his admissions are inadmissible because he was not afforded a proper chance to exercise his sixth and

fourteenth amendment right to the assistance of counsel. We agree with defendant that he had a right to the assistance of counsel when these admissions were elicited in the presence of Deputy Sheriff Moore. As stated by the Supreme Court: "[T]he clear rule of *Massiah* [*Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199] is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer v. Williams* (1977), 430 U.S. 387, 401, 51 L. Ed. 2d 424, 438, 97 S. Ct. 1232, 1240.) Accord, *Escobedo v. Illinois* (1964), 378 U.S. 478, 492, 12 L. Ed. 2d 977, 84 S. Ct. 1758, 1766; see also *People v. Lagardo* (1968), 39 Ill. 2d 614, 237 N.E.2d 484.) Nevertheless, it is clear that even if, as here, incriminating statements are made after appointment or retention of counsel but outside counsel's presence, they are admissible if defendant knowingly and intelligently waived his right to counsel. (*People v. Kelley* (1973), 10 Ill. App. 3d 193, 293 N.E.2d 158; *People v. Anthony* (5th Dist. 1976), 38 Ill. App. 3d 427, 347 N.E.2d 770; *People v. Sandoval* (1976), 41 Ill. App. 3d 741, 353 N.E.2d 715.) Under these circumstances, however, the State bears the heavy burden of showing such a knowing and intelligent waiver. (*Brewer v. Williams,* 430 U.S. 387, 403, 51 L. Ed. 2d 424, 439, 97 S. Ct. 1232, 1241-42; *People v. Sandoval.*) Under the strict standard to be applied in determining the question of waiver of the right to counsel as a matter of Federal constitutional law, it is incumbent upon the State to prove " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023; *Brewer v. Williams* (1977), 430 U.S. 387, 404 51 L. Ed. 2d 424, 439, 97 S. Ct. 1232, 1242.

■■ The preliminary inquiry as to whether there has been a waiver of the right to counsel is for the trial court and in the making of its determination, as in the case of determining whether a statement is voluntarily given, the trial court need not be convinced beyond a reasonable doubt, and the finding of the court on this issue will not be disturbed unless it can be said to be against the manifest weight of the evidence. (*People v. Dailey* (1972), 51 Ill. 2d 239, 242, 282 N.E.2d 129; *People v. Johnson* (1973), 55 Ill. 2d 62, 302 N.E.2d 20.) After examining the evidence in this case in light of the applicable law, we find that the State met its burden of proof as to defendant's knowing and intelligent waiver of his right to counsel and that the trial court's determination is against the manifest weight of the evidence.

Defendant does not contend that his statements were involuntary because of the intrusion of any of the more traditional factors which have been held to necessitate such a finding. Such a contention would be unsupportable on this record. The evidence reveals that defendant gave these answers freely. They were not induced by force, coercion, promises

or threats. Similarly, there is no evidence that defendant is of below average intelligence so as to prevent him from understanding his right to counsel and from intelligently waiving it.

The defendant does contend, however, that the unusual factual situation presented here necessitates a finding that he did not make a knowing and intelligent waiver of his right to counsel with respect to the admissions made before the deputy sheriff. Defendant argues that it can be inferred from the fact that he submitted to a polygraph examination with his attorney's knowledge that he believed that no statements elicited could be used against him in court in spite of the fact that *Miranda* warnings were given to him and acknowledged by him immediately prior to the examination. He further argues that his "waiver" of counsel's presence cannot be presumed to extend to the elicitation of admissions before the deputy sheriff which would be admissible in court. Defendant assumes that under *Brewer*, additional warnings were required when the deputy sheriff entered the room in order to make sufficient proof of a waiver of counsel. We disagree.

■■■ It has long been held that once *Miranda's* mandate has been complied with at the threshold of questioning it is not necessary to repeat the warnings at the beginning of each successive interview. (*People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367, *cert. denied* (1968), 392 U.S. 936, 20 L. Ed. 2d 1394, 88 S. Ct. 2305; *People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.) We do not believe that the factual situation present here dictates a different rule. Moreover, we are left to mere conjecture as to what defendant in fact believed about the questioning. He did not testify at the hearing. The only evidence as to his understanding of the effect of the agreement between the State's Attorney and his counsel was supplied by the argument of his attorney at the hearing. Under these circumstances, defendant's actions are more probative as to whether he effectively waived his right to counsel.

Defendant argues that the circumstances of his case are comparable to those presented in the recent Supreme Court case of *Brewer v. Williams*, in which the court found that the courts of Iowa should have suppressed statements and evidence derived from those statements because the prosecution had failed to prove that defendant waived his right to have counsel present before an officer purposely elicited incriminating information by a speech which was tantamount to interrogation. We believe it is clearly distinguishable. In *Brewer*, defendant clearly expressed that he desired the presence of an attorney before any interrogation took place. He repeatedly told the officer who was transporting him from Davenport to Des Moines that he would tell the whole story *after* seeing his attorney in Des Moines. Despite these

assertions, the officer proceeded to elicit the statements without making any effort to ascertain whether defendant wished to relinquish his right to counsel. In the instant case, the evidence reveals that defendant made no statements whatsoever indicating he wished to assert this right. Moreover, the examiner took pains to see that he understood his right to counsel before defendant gave any answers or made any statements.

■■ The rule in Illinois is that an express, formalistic waiver of the right to counsel is unnecessary to make incriminating statements admissible. The test is that there be a showing of a knowing intent to speak without counsel. Once the defendant has been informed of his rights and indicates he understands those rights it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. (*People v. Johnson* (1973), 55 Ill. 2d 62, 302 N.E.2d 20; *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195; *People v. Riley* (1st Dist. 1977), 49 Ill. App. 3d 304, 364 N.E.2d 306.) This case falls within the ambit of the rule. Defendant was fully informed of his constitutional rights, including the right to the presence and advice of an attorney. He clearly indicated that he understood these rights by initialling each warning and signing the *Miranda* form. He then chose to volunteer incriminating statements *before* the test was begun and to repeat these statements in the presence of the deputy sheriff upon the examiner's questioning of him *after* the test was concluded. We find that this is a record showing of circumstances which constituted a fully effective equivalent to an express record statement of waiver. This evidence, provided by the State, was patently sufficient affirmative evidence to establish that defendant intentionally relinquished his right to counsel. We believe further that the trial court erred in elevating the inferences raised by defense counsel's arguments concerning defendant's lack of understanding to such a level as to negate this showing. In view of the fact that there is no evidence that defendant is of below average intelligence, we see no reason to presume that he believed that the agreement excluding the *results* of his polygraph examination would also shield him from admissions made both *before* and *after* the examination.

We make special note that the application of the above rule does not run afoul of the prescriptions of *Miranda* (384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628) that:

> "* * * a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained"; and that " '* * * the record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer.' " (*People v.*

Fultz (1st Dist. 1975), 32 Ill. App. 3d 317, 337-38, 336 N.E.2d 288, 305-06.)

As is apparent from the *Fultz* decision, an accused's indication that he understands his rights followed closely by his giving of a statement is tantamount to an express record statement of waiver. It is a fully effective equivalent of such. Once the expression of understanding is made the record is no longer "silent." That defendant's indication of understanding of his right to counsel was made here by signing the *Miranda* form rather than by verbal communication is of no consequence as a factor distinguishing it from the cases discussed by the *Fultz* court.

For the foregoing reasons, we find that defendant effectively waived his right to counsel. Consequently, we reverse the order of the circuit court of Montgomery County suppressing these statements and remand this cause for further proceedings.

Reversed and remanded.

CARTER, P. J., and KARNS, J., concur.