THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GOLDIE LaGARDO, Defendant-Appellant.

Second District   No. 77-131

Opinion filed May 3, 1978.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Goldie M. LaGardo, was convicted in a bench trial of attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a)) and was sentenced to a minimum term of four years with a maximum of 12 years. The sentence was to be served concurrently with that imposed upon her conviction of theft in the same trial. She appeals only from the judgment entered on the attempt murder charge, contending that the evidence raised the issue of self-defense and that the State failed to rebut the affirmative defense beyond a reasonable doubt. We agree and therefore reverse.

It is undisputed that on April 9, 1976, the defendant fired four shots from a .38 revolver at Frank Mace; and that he was hit once in the right thigh, once in his back, once to the left of his nose; and suffered injury on the left side of his face from a richocheting bullet.

Frank Mace testified for the State under a grant of immunity. He said that defendant picked him up in her car, that they parked in the center of an open field in Addison, and began to argue over defendant's threat to testify against him in an armed robbery and burglary trial in Cook County; that defendant also threatened to tell the police about another burglary and the theft of the car she was driving. He testified that he then told defendant he was going to kill her, that there is "no way she is going to go to the State's Attorney on this stuff * * * I'm not going to spend my life in prison"; that he punched her below the left eye and reached for a gun she had in her purse. There was a struggle in the course of which the gun discharged. He kicked the defendant, grabbed her left arm which held the weapon with his right hand and grabbed her throat with his left. At this time a second shot went off. Mace felt a very hard punch to the side of his head. The defendant left the car from the driver's side and he left from the passenger side. He noticed then that the passenger door window had been shattered, apparently by one of the bullets. He said the defendant began to run away and he pursued her, quickly catching up to her in the field when she tripped. He tackled her and punched her repeatedly. Although he was almost 6 feet tall, weighing 180 pounds and the defendant was 5 feet 6 inches tall and weighed about 105 pounds, somehow the defendant kicked him off so that he ended with his back to her. A third shot went off. Mace turned and saw the defendant lying on the ground about six feet away. At this point Mace said he blacked out and when he regained consciousness he reentered the car and with great difficulty drove it to a house near the field where he summoned help.

The prosecution, taken by surprise by Mace's testimony, impeached him by a prior statement in which he had said that defendant calmly pulled out a gun and shot him. The State also sought to impeach him

by a statement he had made to a social worker for the purpose of collecting money under a statute intended to compensate victims of crime in which he said defendant shot him because she learned he was informing authorities about the activities of drug dealers. Mace testified that he made the statements but that they were false and made because otherwise the State would not have given him the money to pay his bills.

Mace also testified that he had stolen the car that defendant was driving at the time of the incident some five days before the shooting and at his direction defendant had procured false plates for the car. He also testified that the defendant had bought the gun that was used to shoot him for him and with his money and that she was carrying the gun for him. He further testified that he and the defendant had had a violent argument in September of 1975 over possession of a stolen diamond ring and that he had sought to intimidate her at that time by firing a gun in her general direction.

A 15-year-old boy who was in the field testified for the State that he heard a window in the car shatter, looked at the car and saw the "guy * * * leaning on the lady," and it looked like "she was trying to push him off." The State adduced the proof of another boy, however, who said he saw the man and the woman just sitting and talking to each other in the car. Another young man testified that shortly after the shooting he saw the defendant enter the restaurant where he was working to use the pay phone and that she appeared "neat" and "attractive looking," and that he noticed nothing unusual about her appearance except the size of her breasts. However, he also testified that he directly looked at her for only about 15 seconds. There was further testimony that the defendant's purse and other belongings were left in the car by the defendant when she fled and were found by the police when they searched the car after the shooting. One of the investigating officers testified that he found a bullet in some debris and glass scattered alongside the tire tracks on the driver's side. There was also a stipulation that the mother of Frank Mace would testify that at about 1 a.m. on April 10, 1976, a person whose voice she recognized to be that of the defendant telephoned her at home and asked for Frank Mace; and that she responded, "he is not here and you know where he is" and that the person at the other end answered, "Where is that? In the morgue?" The defense called no witnesses and offered no testimony.

■■ The affirmative defense, self-defense (see Ill. Rev. Stat. 1975, ch. 38, pars. 3—2(a), 7—14), may be raised by "some evidence" in the proof of either the State or the defendant; and when raised the State has the burden of proving beyond a reasonable doubt that defendant did not act in self-defense (Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b); *People v.*

*Williams*, 57 Ill. 2d 239, 242 (1974)). The testimony of Mace clearly was sufficient to raise the issue. See, *e.g., People v. Rorer*, 44 Ill. App. 3d 553, 557-58 (1976).

■■ The trial judge as the trier of the facts found Mace's testimony to be that of a "completely incredible witness" and found him "a terrible liar." It fairly appears that the trial court completely disregarded Mace's testimony. The defendant argues that the court erred in so doing, claiming that much of the witness's trial testimony was supported by circumstantial evidence and by the physical facts. The judge, however, was justified in disregarding the testimony of Mace who was discredited by his admissions to numerous felonies (see, *e.g., People v. Ridley*, 25 Ill. App. 3d 596, 601-02 (1975)) and by his prior inconsistent statements. (See, *e.g., People v. Chupich*, 53 Ill. 2d 572, 578-79 (1973).) The judge hearing the case without a jury could in his discretion determine the weight to be accorded to Mace's testimony and decide that it had none. *People v. Colby*, 27 Ill. 2d 273, 278 (1963); *People v. Jordan*, 4 Ill. 2d 155, 163 (1954).

■■ However, if Mace's testimony is disregarded the court's determination that the defendant beyond a reasonable doubt did not act in self-defense rests entirely on circumstantial evidence which must be examined under the rule that in those cases the guilt of the defendant must be so thoroughly established as to exclude any reasonable hypothesis of the defendant's innocence. *People v. Garrett*, 62 Ill. 151, 163 (1975); *People v. Lewellen*, 43 Ill. 2d 74, 78 (1969).

■■ The circumstantial evidence bearing on the issue of self-defense does not exclude every reasonable hypothesis of innocence. The State relies principally upon testimony which it claims shows that the defendant was not disheveled when seen shortly after the incident, upon the evidence of her flight from the scene as a concession of guilt and upon the physical evidence. The testimony of the young man who saw only the left side of defendant for about four minutes from a distance of 40 feet while she was telephoning and saw her frontally for only about 15 seconds, noting principally her physical endowments, and noting that she did not appear to be disheveled does not exclude beyond a reasonable doubt that the defendant acted in self-defense.

■■ A defendant's flight from the scene may be of some probative value as evincing a consciousness of guilt. (See *People v. Brown*, 27 Ill. 2d 23, 26 (1963); *People v. Woods*, 26 Ill. 2d 557, 562 (1963).) However, flight from the scene of the crime is not sufficient in itself to sustain a conviction. (*People v. Fletcher*, 46 Ill. App. 3d 530, 534 (1977).) Further, the leaving must bear a reasonable relationship to a consciousness of guilt. (*People v. Cokley*, 45 Ill. App. 3d 888, 890 (1977).) Here, the fact that defendant had

been driving a stolen car together with the attendant circumstances provide a reasonable explanation for her leaving the scene. See *People v. Garrett*, 62 Ill. 2d 151, 171 (1975).

The physical evidence also does not exclude every reasonable hypothesis of innocence. The absence of powder burns is argued by the State as circumstantial evidence that defendant fired the gun from a distance and not in self-defense. However, one of the State's medical witnesses testified that the bullet wound in Frank Mace's back was · probably fired at a close range because the entrance wound was very small. Moreover, there was no testimony as to what distance any of the other shots may have been fired; nor was there any testimony relative to how close a gun has to be fired against the target before a powder residue will appear. (*Cf. People v. Garrett*, 62 Ill. 2d 151, 166-67 (1975).) The fact that only defendant's fingerprints were found on the gun also does not show defendant's guilt since there is no question that she had the gun at all times, even though Mace stated in his testimony that he had reached for it. We also find that none of the other physical circumstances relating to the breaking of the window or the position of the spent bullet on the ground afford any probative value as showing guilt. ·

On the other hand it appears quite reasonable that Mace, a self-confessed felon with violent propensities, would have become violent in the car during their discussion and that defendant resorted to her gun for protection. The young witness, Jay Larson, in fact testified that after he heard a window shatter he looked at the car and saw the man "lean on" the lady and said it looked like "she was trying to push him off." The contrary hypothesis advanced by the State's Attorney is inherently improbable since it requires a conclusion that the defendant without any apparent motive drove to an open field in broad daylight with passerbys coming and going and there in cold blood tried to kill her paramour. And that following this premeditated crime she left the stolen car she was driving, her purse containing identification and a gun registered in her name at the scene of the crime. The circumstances create a reasonable doubt as to defendant's guilt. See, *e.g., People v. Garrett*, 62 Ill. 2d 151, 163 (1975); see also *People v. Sheppard*, 402 Ill. 347, 352 (1949).

When we resolve the facts and circumstances on the theory of innocence rather than guilt which we conclude may reasonably be done in this case, the entire record leaves us with substantial doubt of defendant's guilt. See *People v. Lewellen*, 43 Ill. 2d 74, 78 (1969).

We conclude that the evidence does not exclude the hypothesis that the defendant did act in self-defense beyond a reasonable doubt. In view of this conclusion it is unnecessary to consider the further claims made by the defendant that she was improperly sentenced because the court

misapprehended the minimum term allowable for attempt murder or because the information was defective. The judgment of the circuit court is reversed as to the attempt murder.

Reversed.

RECHENMACHER and BOYLE, JJ., concur.