THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STANLEY ANTON, Defendant-Appellant.

First District (2nd Division)    No. 80-1898

Opinion filed September 15, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, George M. Velcich, and Richard B. Levy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial, defendant Stanley Anton was convicted of armed robbery, unlawful restraint and armed violence. The trial court "merged" the unlawful restraint and armed violence convictions into the armed robbery conviction and sentenced defendant to a term of 6 years in the Illinois Department of Corrections. Defendant appeals.

On September 28, 1979, Constance Steinhauer was working at Richards Cleaners in Chicago. At about 6:15 p.m., a man, later identified as defendant, entered the store through the front door and asked for his cleaning. He did not have a ticket for the cleaning and gave his name as Thompson. While explaining this to Steinhauer, defendant was across the counter from her, about three feet away. No one else was in the store, which had fluorescent lighting and was also illuminated by daylight coming through the front door. Steinhauer described the man as big and tall and about 32 years old, with a high hairline and sandy brown hair.

After failing to locate the man's cleaning, Steinhauer turned away from defendant to telephone her father, who lived a block away from the store. While dialing the telephone she noticed defendant coming toward her. He bumped her and grabbed her right arm and told her to hang up the phone and keep looking toward the ground. He then pushed and pulled her by the arms to the rear of the store. Defendant put her in the boiler room, but when she complained it was too hot, put her in the bathroom. When she resisted and threatened to scream, defendant said he would kill her if she did so. Defendant then displayed a "silver and shiny" knife with a blade three to five inches long. Although the lights in the rear of the store were off, Steinhauer could see because the back door was open and let the daylight in.

Defendant left her in the bathroom. Approximately 15 seconds later

she heard the cash register in the front of the store open and heard "change." Very shortly after hearing the cash register open she ran out of the store through the rear door. Shortly thereafter, she returned to the store but was afraid to enter. While standing outside, Steinhauer did not see anyone in the store but noticed that the clothes bags were pushed forward. When her father arrived, about 10 or 15 minutes later after defendant was in the store, she entered the building and checked the cash register, which was empty. There had been at least $60 in the cash register prior to the incident.

Steinhauer identified defendant in photographs, at a police lineup and at trial as the man who entered the cleaners and forced her with a knife into the bathroom at the rear of the store.

At the time of the robbery, James Reichard was working on a house behind the cleaners. He testified that he saw a man, whom he identified as defendant, run out of the cleaners followed, about 2 minutes later, by a girl screaming she had been held up. Reichard chased the defendant over some fences to a nearby parking lot where he saw defendant sitting in a gold Oldsmobile Toronado. Reichard then began beating on the window of the car. As the car left the lot Reichard noted that it had an Illinois license plate, number BW 5640. Defendant owned a brown and cream Oldsmobile Toronado with that Illinois license plate number.

Prior to trial a suppression hearing was held on defendant's motion to exclude Steinhauer's identification testimony. Defendant called two witnesses at the hearing. Before any testimony was taken, defense counsel noted that he had put defendant "some place else for the time being" because of "the identification problem."

The first witness was Officer Kinnane, a Chicago police investigator. He testified that he and his partner interviewed Constance Steinhauer, the complainant, approximately 1 week after the robbery and received an estimate of the offender's height and weight. With this information and the police report, Kinnane obtained a series of photographs of white males with medium brown hair. About 2 weeks after the robbery Kinnane and his partner showed Steinhauer the photos. When she came to defendant's picture, she told the officers that he was the man who robbed her. Defendant was subsequently arrested with a warrant on October 30, 1979. A lineup was held on October 30 or 31 in a Chicago police station. At the suppression hearing, Officer Kinnane explained the manner in which defendant was informed of his rights. Kinnane testified that after giving defendant his *Miranda* warnings,

"I then further informed him he was going to stand in a lineup. I stated further he had a right, since criminal proceedings had already taken place, to have that [sic] attorney present during such lineup if he so requested at which time he stated he understood the

rights I asked him after each and every right I had given him and I asked him if he understood the rights fully and he stated he did. I asked him if he wished to have an attorney present to speak to an attorney and he said he did not."

Questioning of defendant ceased when defendant told the officers he would not make a statement.

Constance Steinhauer was the second witness called at the suppression hearing. Prior to her being called, however, defense counsel asked the court to allow defendant to stand outside the courtroom so he could hear the testimony while remaining outside the view of the witness. The court allowed counsel to put defendant outside the courtroom for the remainder of the hearing. Steinhauer testified about the robbery and her initial description of the man who robbed the cleaners. She also recalled being interviewed by two officers a few weeks after the incident and again a few weeks after that when they brought her some photographs to look through. Steinhauer said she picked the photo that "looked like" the man who robbed the store. The police then told her that they thought the man she picked out had committed the crime.

Steinhauer later viewed a lineup where she picked out defendant as soon as he entered the room. She was not shown any photos on the day of the lineup and testified at the hearing that she did not identify defendant solely on the basis of the earlier photos. Rather, she remembered him because of his face, hair line and "droopy" eyes. However, she shortly thereafter testified that the photographs given to her by the two police investigators, from which she identified defendant as the robber, did cause her to identify defendant at the lineup.

After hearing the testimony of the suppression hearing, the trial court concluded that the photographs shown Steinhauer were substantially similar and the array was not suggestive. The court further found that the lineup was fair and not suggestive and that defendant had declined the presence of counsel at the lineup. Based on these conclusions, the trial court denied defendant's motion to suppress complainant's identification testimony. The identification testimony was admitted at trial. Based in part on this evidence, the trial court concluded that defendant's alibi was weak and unbelievable and found defendant guilty of all three counts of the information. The court then merged the unlawful restraint and armed violence counts into the armed robbery count and sentenced defendant to 6 years' imprisonment.

Defendant's first contention on appeal is that complainant's pretrial photographic identification of defendant was unnecessarily suggestive, rendering identification testimony inadmissible at trial. In support of his position, defendant points to the actions of Officer Kinnane and his partner who, after complainant identified a photo of defendant as the

man who robbed the cleaners, said they thought he was the offender. Defendant asserts that any subsequent identification was tainted by the allegedly improper actions of the police in confirming complainant's belief.

Defendant had a right to a fair pretrial hearing to determine whether his identification by complainant was based on her observation of him during the commission of the crime or whether it was improperly influenced by the actions of the police investigators. (See *People v. Robinson* (1970), 46 Ill. 2d 229, 231-32, 263 N.E.2d 57; *People v. Seets* (1976), 37 Ill. App. 3d 369, 370, 346 N.E.2d 61.) The trial court held such a hearing and determined that the photographic identification was not suggestive or otherwise improper. The underlying issue here is whether complainant's in-court identification was based on an out-of-court photographic identification which was so impermissibly suggestive as to create a substantial risk of irreparable misidentification. (See *People v. McTush* (1980), 81 Ill. 2d 513, 518-19, 410 N.E.2d 861, quoting *Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.) The *Simmons* court noted the hazards of photographic identification but said those hazards were substantially lessened by defense counsel's opportunity to cross-examine the eyewitness at trial. *Simmons*, at 377, 384; see *McTush*, at 513, 519.

The initial burden is on the defendant to establish that the pretrial identification was impermissibly suggestive and created substantial likelihood of irreparable misidentification. (*People v. Watkins* (1970), 46 Ill. 2d 273, 278, 263 N.E.2d 115; *People v. Johnson* (1970), 45 Ill. 2d 38, 45-46, 257 N.E.2d 3.) If that burden is met, the State may overcome that obstacle by a clear and convincing showing, based on the totality of the circumstances, that the witness' identification of the defendant is based solely on his memory of the crime. (*McTush*, at 513, 520; see *Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 53 L. Ed. 2d 140, 158-59, 97 S. Ct. 2243, 2257 (Marshall, J., dissenting).) We find, however, that the State's burden never arose because defendant failed to meet his burden of establishing that the pretrial photo identification was so impermissibly suggestive as to create a substantial risk of irreparable misidentification. See *McTush*, at 518.

■■ The factors to be considered in evaluating the risk of misidentification include the witness' opportunity to view the offender at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description, the level of certainty shown by the witness at the pretrial identification and the length of time between the crime and the pretrial identification. (*Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411-12, 93 S. Ct. 375, 382; *McTush*, at 521.) A review of the record reveals that the trial court was correct in finding that the photo

identification of defendant was not so unnecessarily suggestive as to create a substantial risk of mistaken identification. Steinhauer had approximately 10 minutes to view the offender at the time of the crime. She appeared to be fully attentive during the robbery and her earlier descriptions of the offender consistently fit defendant. Furthermore, the photo identification of defendant took place only a few weeks after the robbery. While we note that Steinhauer's photo identification of defendant from a group of seven photographs was that it "looked like" the man who robbed the cleaners, this minor equivocation is not significant.

Additionally, no reversible error is shown where it is possible for a reviewing court, based on an informed judgment, to perceive from the record the presence of an independent origin for the in-court identification which was free of any improper suggestions made prior to trial. (*Seets*, at 371; *People v. Nudo* (1971), 131 Ill. App. 2d 930, 934, 268 N.E.2d 894.) This is true even where the pretrial motion to suppress was incorrectly denied. (*Seets*, at 371.) Therefore, even if we found that the trial court erred in denying defendant's motion to suppress the identification testimony, this court could decide for itself, based on the record, that there was an independent origin of the in-court identification of defendant. The record shows Miss Steinhauer had the opportunity to clearly observe defendant during the robbery and her description of the offender was consistent from the time she was first interviewed by the police until trial. In addition there is the corroborating testimony of Reichard, who identified defendant as the man running out of the rear of the cleaners at the time of the robbery.

■■ Defendant next contends that he was denied his right to counsel at the lineup, rendering inadmissible the lineup identification and the courtroom identification flowing from it. Defendant's position is that his waiver of the right to counsel at the lineup was ineffective because it dealt solely with whether he wanted "to speak to an attorney" and not with whether he wished to have an attorney present at the lineup. Defendant's contention is utterly without merit. The undisputed testimony of Officer Kinnane shows that defendant was told that since criminal proceedings had already taken place, he had the right to have an attorney present at the lineup. When asked "if he wished to have an attorney present to speak to an attorney," defendant said he did not. Defendant further stated that he fully understood his rights and that he would not make a statement. Defendant knowingly and intelligently waived his right to have counsel present during the lineup. See *People v. Petty* (1977), 54 Ill. App. 3d 1044, 1050, 370 N.E.2d 553; *People v. Sandoval* (1976), 41 Ill. App. 3d 741, 744-45, 353 N.E.2d 715.

Defendant further contends that he was improperly denied his right to be physically present in the courtroom at the suppression hearing,

thereby preventing his participation in his own defense. Defendant cites the fact that his attorney at the hearing removed defendant from the courtroom before the witnesses took the stand because of "the identification problem." Prior to the testimony of Constance Steinhauer, the second witness at the suppression hearing, defense counsel asked permission "to have defendant either stand at the back of the courtroom door with it open so he may hear her testimony or in the conference room with the door open without being physically present in the courtroom." The court permitted defense counsel to place defendant outside the courtroom. Defendant now asserts that such actions deprived him of his right to participate in his own defense.

■■ A defendant has the right to be present in the courtroom at every stage of the trial. (*People v. Pierce* (1974), 56 Ill. 2d 361, 365, 308 N.E.2d 577.) It is equally clear that a defendant has the right to appear and defend in person and through counsel at all stages of the proceedings against him where substantial rights might be affected. (See *People v. Woods* (1963), 27 Ill. 2d 393, 395, 189 N.E.2d 293; *People v. Huston* (1977), 46 Ill. App. 3d 170, 172, 360 N.E.2d 986.) However, "this right is not absolute; where defendant's substantial rights are not involved or where his presence would be useless, he need not be present." *People v. Saltz* (1979), 75 Ill. App. 3d 477, 479-80, 393 N.E.2d 1292 (defendant's presence not required during presentation of counsel's argument on a motion for mistrial or during examination of jurors as to whether they read a particular newspaper); see *Pierce*, at 365 (no prejudicial error where defendant was not present during consideration of jury's request to review certain testimony); *People v. Ellis* (1980), 81 Ill. App. 3d 351, 353, 401 N.E.2d 282 (defendant has no absolute right to be present at a hearing on a motion to vacate a guilty plea); *People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 1068, 349 N.E.2d 454 (defendant's presence not required during court's preliminary hearing to determine the competency of a seven-year-old complainant).

■■ In the present case, defense counsel, in the interest of defendant, asked that defendant not be present during the testimony of the suppression hearing witnesses because of the "identification problem." Prior to the testimony of the complainant, the trial court permitted defense counsel to place defendant outside the courtroom. There is nothing in the record to indicate that defendant objected in any way to his attorney's trial tactic. Additionally, defendant has failed to demonstrate that he was in any way prejudiced by the trial court's action in allowing him to stand out of the presence of the witnesses during the hearing. Absent such a showing, this court is not obligated to declare a mistrial and grant defendant a new trial. (See *Huston*, at 172; *People v. Longstreet* (1971), 2 Ill. App. 3d 556, 557-58, 276 N.E.2d 825.) The record in this case reveals

that defendant's physical presence in the courtroom at the suppression hearing would have added nothing to his defense. His able counsel was present and it appears that defendant was in fact listening to the testimony of the witnesses. The decision of counsel to keep him from the view of the witnesses seems to have been in the best interests of defendant. We will not permit such a tactic to be used by defendant to gain a new trial.

Defendant's next contention is that the State failed to prove it was he who took the money from the cash register, and therefore he was not convicted of armed robbery beyond a reasonable doubt. In substance, defendant asserts that the testimony of Constance Steinhauer (that defendant forced her into the bathroom and she shortly thereafter heard the cash register open and the sound of "change") did not prove beyond a reasonable doubt that he took the money. The implication is that the money could have been taken by someone else while the store was empty after Steinhauer ran out of the store and before she returned 10 or 15 minutes later. Defendant claims that the State failed to show to "a reasonable and moral certainty that [he] and no one else committed the crime." (*People v. Widmayer* (1948), 402 Ill. 143, 147, 83 N.E.2d 285), which is required when circumstantial evidence is used to convict an accused. *Widmayer*, at 146-47.

A conviction may be sustained on circumstantial as well as direct evidence. (*People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197 N.E.2d 436.) The only requirement is that the proof of circumstances be of a conclusive nature and tend to lead, on the whole, to a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801; *People v. Magnafichi* (1956), 9 Ill. 2d 169, 173, 137 N.E.2d 256; *People v. Pappas* (1978), 66 Ill. App. 3d 360, 371-72, 383 N.E.2d 1190, *cert. denied* (1979), 444 U.S. 843, 62 L. Ed. 2d 55, 100 S. Ct. 85.) Phrased another way, if the case is based on circumstantial evidence, the guilt of the defendant must be established so as to exclude any reasonable hypothesis of defendant's innocence. (*People v. Garrett* (1975), 62 Ill. 2d 151, 163, 339 N.E.2d 753; *People v. LaGardo* (1978), 59 Ill. App. 3d 780, 783, 376 N.E.2d 62.) However, it is not required that the trier of fact be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt. It is sufficient if the evidence, on the whole, convinces the trier of fact beyond a reasonable doubt of the guilt of the accused. (See *Bernette*, at 367.) It is clear that proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of doubt. *Williams*, at 485; *People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213.

■■ We note that the evidence used to convict defendant was only

partially circumstantial. He was positively identified by two eyewitnesses: the complainant and Reichard, who saw him run from the back of the cleaners to his getaway car. The only aspect of armed robbery proved by circumstantial evidence was the physical taking of the money from the cash register. An examination of the record as a whole reveals that there clearly was an abundance of evidence to show beyond a reasonable doubt that defendant was the party who, with a knife, forced Steinhauer into the bathroom of the cleaners and took the money from the cash register. The record shows this to a reasonable and moral certainty through evidence that excludes any reasonable hypothesis of defendant's innocence.

Defendant's final contention on appeal is that errors by the trial judge in questioning defendant and in recalling the evidence denied defendant a fair trial. Specifically, defendant asserts that the questioning of defendant by the trial judge opened the door to further cross-examination by the State. The testimony elicited from these examinations was used by the State in its closing argument to show the infirmities in defendant's alibi. Regarding the trial court's incorrectly recalling the evidence, defendant cites the trial judge's explanation in entering its findings, at which time he said there were *two* witnesses that defendant entered the cleaners, forced Connie Steinhauer into a rear bathroom with a knife and shortly thereafter she heard the cash register open. The judge went on to say that "two witnesses, Miss Steinhauer and Mr. Reichard, positively identified defendant Anton as being the man involved."

■■ Taking the second of these alleged trial court errors first, it is not readily apparent that the trial judge misstated the evidence. The explanation of the trial court can easily be read in a manner completely consistent with the facts introduced at trial. There were, in fact, two witnesses who identified defendant as the man who was at the cleaners at the time in question. Miss Steinhauer identified defendant as the man who forced her at knifepoint into a rear bathroom of the cleaning store and Mr. Reichard identified defendant as the man he saw running out of the cleaners and whom he chased over fences. It cannot be said that the trial court misunderstood or disregarded material evidence (see *Loudon v. Mullins* (1891), 52 Ill. App. 410, 413) or that it based its findings on facts not introduced in evidence. (See *McGurn v. Brotman* (1960), 25 Ill. App. 2d 294, 298, 167 N.E.2d 12.) In a bench trial of a criminal case, the trial judge is generally presumed to have considered only competent evidence in making his findings. (*People v. Robinson* (1964), 30 Ill. 2d 437, 439, 197 N.E.2d 45; *People v. McGovern* (1970), 126 Ill. App. 2d 393, 400, 261 N.E.2d 689.) The trial judge's imprecise verbalization of the evidence is insufficient to overcome this presumption.

■■ Defendant endeavors to show that by questioning him after defense counsel and the State had ceased their questioning, the trial judge

subjected defendant to further cross-examination which was prejudicial and denied him a fair trial. The trial court, in the proper exercise of his discretion, may question a witness for the purpose of clarifying any ambiguities that may exist and to help elicit the truth. (*People v. Santucci* (1962), 24 Ill. 2d 93, 98, 180 N.E.2d 491; *People v. Rogers* (1974), 18 Ill. App. 3d 940, 943, 310 N.E.2d 854.) However, it is an abuse of discretion for the court to assume the role of the prosecutor. (See *People v. Trefonas* (1956), 9 Ill. 2d 92, 100, 136 N.E.2d 817; *Rogers*, at 943; *People v. McGrath* (1967), 80 Ill. App. 2d 229, 236, 224 N.E.2d 660.) The record discloses that the trial judge did not abuse his discretion in questioning defendant. The court simply asked defendant a few questions regarding his alibi of being at the Glenview Naval Air Station at the time of the robbery. Each of the attorneys then asked further questions pertaining to the alibi. The trial judge did not act as a prosecutor. Additionally, defense counsel made use of the opportunity to continue questioning defendant subsequent to the court's and the State's questioning. We also note that this was a bench trial. Thus, the danger of conveying the court's impressions to the jury did not exist. (See *Santucci*, at 98.) The fairness of defendant's trial was unaffected by the trial judge's participation in questioning defendant.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

HARTMAN, P. J., and DOWNING, J., concur.